572 So.2d 933 (1990)
INTERNATIONAL SURPLUS LINES INSURANCE COMPANY, Appellant,
v.
SEAGRAVE HOUSE, INC., et al., Appellees.
No. 90-1029.
District Court of Appeal of Florida, Fifth District.
November 21, 1990.
Rehearing Denied January 11, 1991.
*934 Vincent M. D'Assaro, Orlando, for appellant.
John A. Reed, Jr. and M. Dianne Misiak of Lowndes, Drosdick, Doster, Kantor & Reed, P.A., Orlando, for appellees.
DAUKSCH, Judge.
This is an appeal from a judgment declaring that appellant must defend appellees in a lawsuit. We reverse.
Appellant is an insurance company and appellees are the insureds in a contract with appellant. The policy is a malpractice policy and the material terms of the policy provide:
I. COVERAGE  PROFESSIONAL LIABILITY:
To pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as compensatory money damages as a result of civil claims first made against the Insured and reported to the Company during the policy period by reason of any professional services rendered or which should have been rendered subsequent to the retroactive date, as stated in Item 6 of the Declarations, by the Insured or by any person for whose acts, errors or omissions the Insured is legally liable.
II. DEFENSE, SETTLEMENT:
With respect to the insurance afforded by this policy, the Company shall defend any claim or suit against the Insured seeking compensatory money damages to which this insurance applies even if any of the allegations of the suit are groundless, false or fraudulent. It is agreed that the Company may make such investigation and settlement of any claim or suit as it deems expedient, but the Company shall not be obligated to pay any claim or judgment or to defend or continue to defend any claim or suit after the applicable limit of the Company's liability has been exhausted by payment of judgments or settlements.
The definitions provide that the term "Insured" shall mean, inter alia:
(b) Any person who was, is now or hereafter becomes a partner, executive officer, director, stockholder or employee of any of the foregoing, whether named or not, but only while acting in the scope of their duties as such.
The conditions, inter alia, provide:
POLICY PERIOD, TERRITORY
This policy applies to claims first made against the Insured and reported to the Company during the Policy Period by reason of any act, error or omission in professional services as covered by this policy which are rendered anywhere in the world, provided claim or suit is brought and maintained in the United States, its territories, possessions or Canada.
NOTIFICATION OF INCIDENT
If, during the Policy Period, the Company shall receive written notice of an act, error or omission which could reasonably be expected to give rise to a claim against the Insured under this policy, any claim which subsequently arises out of such act, error or omission shall be considered a claim first made against the Insured during the policy period in which the written notice was received.
*935 Michael D. Rose, a former employee of the named insured/appellees and his wife, Marsha Rose, brought an action as plaintiffs in the United States District Court, Middle District of Florida, against appellee; John Kelly, Clinical Director at Seagrave House, and Robert Smith, Executive Director of Seagrave House. Both Kelly and Smith were sued individually and in their official capacity.
Rose was employed by appellee Seagrave House in its therapeutic group home known as Hilltop House, and his employment with Seagrave House terminated as the culmination of a controversy between Rose and Seagrave House over the rendition of professional services by Rose and Seagrave House to the residents of Hilltop House. Paragraph 17 of Count One of the complaint states:
17. The real reason for Plaintiff's discharge was due to the fact that Plaintiff, MICHAEL D. ROSE "blew the whistle" on Defendant, SEAGRAVE HOUSE, INC., Defendant, ROBERT L. SMITH, and Defendant, JOHN KELLY, for their failure to properly disclose and protect the physical well being of minor children residing at the Defendants' facility known as Hilltop House. Furthermore, the fact that Plaintiff, MICHAEL D. ROSE, "blew the whistle" on Defendant SMITH's and Defendant KELLY's intentional cover-up of the sexual and physical abuse of certain minor children and of intentional falsification of documents by said Defendants acting in both their official capacity and individual capacity, and thus [the termination of] Plaintiff, MICHAEL D. ROSE, was actually without proper cause. This was accomplished in the following fashion:
* * * * * *
(B) In 1985, Plaintiff ROSE became aware of numerous ongoing violations of State law pertaining to the physical and sexual abuse of children; anal and oral homosexual intercourse between male children; falsification and alteration of clinical treatment records regarding recordation and recommended treatment to be rendered to said children; directives by Defendant SMITH and Defendant KELLY interfering with ROSE's and Dr. Richard Stolp's treatment plans which attempted to treat said children for these severe sexual behaviors. These children were residing at the SEAGRAVE facility known as Hilltop House. Plaintiff ROSE became aware of these activities and behavior through his then supervisor, Dr. Richard Stolp, co-worker Jackie Smith, and through Plaintiff's personal observations. Plaintiff ROSE was further informed by Dr. Stolp and Jackie Smith that the ongoing violations of State law pertaining to the failure to report the physical and sexual abuse of these children; the anal and oral homosexual intercourse between these young male children; falsification and alteration of clinical treatment records regarding the recordation and treatment rendered to the involved children; and directives by Defendants SMITH and KELLY interfering with ROSE's and Dr. Stolp's treatment plans which attempted to treat these children at the Hilltop House facility were being actively and intentionally covered by Defendant, SEAGRAVE HOUSE, INC., by and through its administrators, Defendants SMITH and KELLY.
(C) In early March, 1986 ... Plaintiff ROSE truthfully informed Assistant State Attorney [Richard] Parkinson of the ongoing violations of State law pertaining to the failure to report the physical and sexual abuse of certain children; the anal and oral homosexual intercourse between young male children; falsification and alteration of clinical treatment records regarding the severe sexual behavior and treatment rendered to these young children; and directives by Defendants SMITH and KELLY interfering with Plaintiff ROSE's and Dr. Richard Stolp's treatment plans which attempted to treat the children; and the subsequent cover-up by Defendant, SEAGRAVE HOUSE, INC., and Defendants, ROBERT SMITH and JOHN KELLY.
* * * * * *
(D) On or about March 25, 1986, Plaintiff ROSE discussed these matters with *936 agents for the Department of Health and Rehabilitative Services.
* * * * * *
(F) On or about April 2, 1986, Plaintiff ROSE was present at the Defendant's Hilltop House facility when a child in residence at the facility allegedly assaulted a staff member and at the same time another staff member allegedly physically abused one of the minor children in residence at the facility. In response to this particular series of events, Plaintiff ROSE attempted to contact the local Orange County Sheriff's Office regarding the assault situation; however, Plaintiff's efforts were stymied by Defendant SMITH.
* * * * * *
21. At about this same time Defendant SMITH approached the news media, Department of Health and Rehabilitative Services and the Orange County Sheriff issuing statements implying that someone had allegedly broken into Hilltop House, and stolen records from Hilltop House, and in so doing implied through innuendo that ROSE was the guilty party, although ROSE was never confronted with this allegation. In reality, Defendant SMITH knew or believed that ROSE had provided these records to the Assistant State Attorney, Richard Parkinson, pursuant to directives issued by the Assistant State Attorney to Plaintiff.
22. Subsequent to Defendant SMITH's allegation to the news media regarding the theft of records from Hilltop House, Assistant State Attorney, Richard Parkinson had to issue a memorandum to the media and contact Orange County Sheriff Lawson Lamar to advise them that the records had not in fact been stolen from Hilltop House but that he had directed Plaintiff ROSE to remove the records pursuant to the State's ongoing investigation of the allegations of violations of State law regarding the reporting of physical and sexual abuse of children; anal and oral intercourse between children; falsification and alteration of clinical treatment records regarding treatment rendered to the children; and directives by SMITH and KELLY interfering with Plaintiff's and Dr. Richard Stolp's treatment plans in their attempt to treat the children residing at SEAGRAVE HOUSE, INC.
In sum, Rose alleges the actual reason for his discharge from employment at Seagrave House was Smith and Kelly's failure to properly render professional services to the children residing at Hilltop House, and Rose's disclosure of these omissions to Parkinson, HRS and the media. Count II alleges a denial of Rose's free speech rights; Count III, Wrongful Procurement of Dismissal from Employment; Counts IV and V, Intentional Infliction of Emotional Distress; Count VI, Tortious Interference with Business Relationships; Count VII, Negligent Misrepresentation; Count VIII, Defamation Per Quod; Count IX, Defamation Per se.
During the pendency of Rose's action against appellees, appellees sought a declaratory judgment in state court that appellant owed appellees a duty to defend under the terms of the previously identified malpractice policy providing professional liability insurance coverage.
Appellees moved for partial summary final judgment requesting that the court find as a matter of law that appellant had a duty to defend appellees in the action against them by Rose, arguing that Rose's claims fell within the coverage provisions of the policy prepared by appellant, providing coverage for damages which result from claims filed "by reason of any professional services rendered or which should have been rendered."
Simply stated it is appellant's position that appellees are being sued for wrongful discharge from employment and not for professional malpractice. The trial court defined the issue as being "whether a duty to properly hire and fire employees is included within the `professional services' category of the policy."
It is our interpretation of the insurance contract that coverage is not for wrongful discharge from employment and the other alleged torts but is only for injuries suffered *937 by patients or clients of the insured as a result of improper or inadequate provision of professional services. Perhaps the plaintiff-employee is correct that appellees breached a "duty to properly hire and fire employees," but that breach of duty is not actionable by him as a malpractice claim. If an injured patient or client sues a professional and alleges a "breach of duty to properly hire and fire employees" then the insurance company can be required to defend and answer to that alleged breach of duty. That is not this case so we reverse the partial summary judgment and remand for further proceedings consistent with this opinion.
REVERSED and REMANDED.
W. SHARP and GOSHORN, JJ., concur.