603 A.2d 1050

**Richard F. BIBOROSCH t/a the R.F. Biborosch Agency**

**v.**

**TRANSAMERICA INSURANCE COMPANY and Industrial Indemnity Company and Employers Reinsurance Corp. and Raymond B. Jewell.**

**Appeal of TRANSAMERICA INSURANCE COMPANY and Industrial Indemnity Company, Appellant.**

**Richard BIBOROSCH, t/a R.F. Biborosch Agency**

**v.**

**TRANSAMERICA INSURANCE COMPANY and Industrial Indemnity Company and Employers Reinsurance Corporation and Raymond B. Jewell.**

**Appeal of EMPLOYERS REINSURANCE CORPORATION, Appellant.**

Superior Court of Pennsylvania.

Argued April 17, 1991.

Filed Feb. 27, 1992.

506

Leslie M. Cyr, Philadelphia, for appellant (at 990) and for Transamerica Ins., appellee (at 991).

Susan McLaughlin, Philadelphia, for appellant (at 991) and for Employers Reinsurance, appellee (at 990).

Robert R. Reeder, Philadelphia, for Biborosch, appellee.

Before MONTEMURO, BECK and TAMILIA, JJ.

BECK, Judge:

In this appeal we are asked to decide whether three professional liability insurers have a duty to defend their insured, a general insurance agent and manager of a general insurance agency, against claims arising out of the insured's discharge of a soliciting agent working in the insured's agency.

The issue arises out of the following scenario. Appellee, Richard F. Biborosch, is a general insurance agent and manager of a general insurance agency engaged in the solicitation of applications for and the sale and servicing of the insurance products of Penn Mutual Life Insurance Company and Penn Insurance and Annuity Company (hereinafter collectively referred to as "Penn"). Pursuant to Biborosch's contracts with Penn, his duties as agency manager included the recruiting, training and supervision of soliciting agents and brokers. Biborosch contends that in connection with these duties, in late 1986 he and Penn became convinced that one of the soliciting agents working in Biborosch's agency, Raymond B. Jewell, was replacing Penn policies with policies of a competitor. In other words, instead of renewing Penn policies on behalf of the agency's clients, Jewell was thought to be obtaining new policies issued by a different insurer. As a result, Biborosch and Penn terminated Jewell and cancelled his license to sell Penn products.

On July 7, 1987, Jewell filed a multi-count complaint against Biborosch and Penn in the Chester County Court of Common Pleas (the "Jewell action"). He alleged tortious interference with contractual relations, breach of contract, wrongful discharge and breach of the duty of good faith and fair dealing.

Biborosch maintained professional liability insurance with three insurers, Transamerica Insurance Company, Employers Reinsurance Corporation, and The Industrial Indemnity Company. Upon being notified of the Jewell action, Biborosch requested that the three insurers undertake the defense of that action, contending that the claims raised in the

Jewell action potentially fell within the coverage of the policies. All three insurers refused this request on the ground that Jewell's claims did not potentially fall within the coverage of the various policies. Biborosch responded to this refusal by instituting a declaratory judgment action against all three insurers in the Montgomery County Court of Common Pleas. He sought a declaration that the insurers owed him a duty of defense and indemnity under the policies. After the pleadings stage was completed and some discovery conducted, all parties filed motions for summary judgment. On March 9, 1990, the trial court denied the insurers' motions and granted Biborosch's motion to the extent that it requested a declaration that the insurers had a duty to defend the Jewell action. All three insurers appealed, and their appeals have been consolidated before this court.

The duty to defend is different from and greater than the duty to indemnify. If the factual allegations of the complaint against the insured state a claim which would *potentially* fall within the coverage of the policy, then the insurer has the duty to defend. *See D'Auria v. Zurich Ins. Co.*, 352 Pa.Super. 231, 507 A.2d 857, 859 (1986) (citing, *inter alia, Pacific Indem. Co. v. Linn*, 590 F.Supp. 643 (E.D.Pa.1984), *aff'd*, 766 F.2d 754 (3d Cir.1985)). As the Supreme Court has stated, "[i]t is not the actual details of the injury, but the nature of the claim which determines whether the insurer is required to defend." *Springfield Twp. v. Indemnity Ins. Co. of North America*, 361 Pa. 461, 464, 64 A.2d 761 (1949). In making this determination, the factual allegations of the complaint are taken to be true and the complaint is to be liberally construed with all doubts as to whether the claims may fall within the coverage of the policy to be resolved in favor of the insured. *Cadwallader v. New Amsterdam Casualty Co.*, 396 Pa. 582, 152 A.2d 484 (1959). Thus, we must look to two sources to decide whether a duty to defend exists. We must interpret the insurance policy to determine the scope of coverage. Then, we must analyze the complaint filed against the insured to

determine whether the claims asserted potentially falls within that coverage. *Id.; see also Seaboard Industries, Inc. v. Monaco,* 258 Pa.Super. 170, 392 A.2d 738 (1978).

Since the terms of the three policies at issue are not identical, each containing its own distinct description of the coverage provided, we must conduct a separate analysis of the coverage provided under each policy in order to determine each insurer's duty to defend the Jewell action.

## I. *Transamerica Policy.*

■ The Transamerica policy provides, in pertinent part, as follows:

I. COVERAGE—PROFESSIONAL LIABILITY AND PERSONAL INJURY:

To pay on behalf of the INSURED all sums which the INSURED shall become legally obligated to pay as DAMAGES because of:

A. Any act, error or omission of the INSURED, or any person for whose acts the INSURED is legally liable in the rendering or failing to render PROFESSIONAL SERVICES for others in the conduct of the NAMED INSURED'S profession as Life Underwriter, Licensed Life, Accident and Health Insurance General Agent or Manager, Licensed Life, Accident and Health Insurance Broker and Registered Representative while there is in effect a contract between the NAMED INSURED and the insurance company named in Item 1 of the Declarations;

. . . .

D. Any actual or alleged negligent failure of an INSURED that is also a General Agent or Manager of the insurance company named in Item 1 of the Declarations to supervise, manage or train any NAMED INSURED.

. . . .

H. "PROFESSIONAL SERVICES" shall mean those services necessary or incidental in the conduct of the

insurance business of the NAMED INSURED including:

1. the sale and/or servicing of life insurance, disability income insurance, annuities, accident and health insurance plans (including Blue Cross/Blue Shield Organizations);

2. the sale and/or servicing of variable annuities....

3. the sale and/or servicing of employee benefit plans....

4. advice, consultation, administration and services in conjunction with all of the above, whether or not a separate fee is charged.

This provision can be reduced to three basic requirements. First, the policy requires that the damages the insured seeks to bring within the coverage of the policy arise from acts, errors or omissions of the insured in the rendering or failing to render professional services. Since the phrase "professional services" is defined in the Transamerica policy, this requirement must be construed in light of the policy definition. That definition contains two basic parts. Professional services 1) are services necessary or incidental to the conduct of the insurance business of the insured; and 2) specifically include the sale and/or servicing of various insurance products and advice, consultation, administration and services in conjunction therewith.

The second basic requirement of the policy is that the services must have been rendered to others. The phrase "to others" is undefined.

The third requirement is that the services must have been performed in the conduct of the insured's profession as, *inter alia*, an insurance broker and insurance general agent or manager.

Our task is to construe these requirements to determine if they are potentially fulfilled by the claims made in the Jewell action. This analysis must begin with a close examination of the complaint filed in that action to determine the nature of those claims. The Jewell action is premised

almost entirely on the wrongful discharge of Jewell by Biborosch and Penn. The complaint alleges that the termination of Jewell from the Biborosch agency and the termination of his license to sell Penn insurance products are actionable both in tort, because they were motivated by ill will, constituted violations of public policy and were in breach of a duty of fair dealing, and in contract, because they were in breach of an alleged employment contract. The complaint further alleges that after Jewell was terminated, Biborosch and Penn intentionally interfered with Jewell's contractual relationship with a third party who was also a soliciting agent for Penn.

We view these allegations as potentially falling within the scope of the Transamerica policy. We reach this conclusion primarily because the Transamerica policy specifically insures Biborosch not only as an insurance broker, but also as a general agent or manager. This crucial aspect of the Transamerica policy brings the Jewell action potentially within the coverage of the policy, thereby giving rise to the duty to defend.

Clearly, the first requirement of the policy as stated above is fulfilled by Jewell's claims, all of which arise from his allegedly wrongful discharge and termination of his license to sell Penn products. Biborosch's termination of Jewell was clearly an act by Biborosch committed in the course of rendering professional services as general manager of the agency. Moreover, since professional services are defined as any acts necessary or incidental to the conduct of Biborosch's insurance business, including, *inter alia,* administration in connection therewith, it can readily be seen that Biborosch's action in terminating Jewell falls within this definition as well. In terminating Jewell, Biborosch was engaged in the conduct and administration of his insurance business.

The third requirement of the policy is also fulfilled by Jewell's claims. This requirement limits the coverage of the policy to professional services rendered in the conduct of Biborosch's profession as, *inter alia,* general manager of the agency. We have no doubt that terminating a soliciting

agent working in the agency that Biborosch was managing is an act that falls within the potential coverage of the policy. In fact, Biborosch's employment contracts with Penn, in which the terms of his employment as general agency manager are defined, specifically refer to Biborosch's responsibilities for supervising soliciting agents like Jewell and for terminating their contracts whenever Penn determined that their licenses to sell Penn products should be terminated.

The final requirement of the policy is that the professional services in question have been rendered "to others." The policy itself does not define this phrase. There are no limitations on the scope of the phrase, whether to purchasers of insurance products from Biborosch or otherwise, and there is no other section of the policy that might give us guidance in construing this phrase. Although Transamerica argues that the phrase must be read as meaning "to clients of the insured", we see no indication in the policy itself that this limited construction was intended by the parties. In addition, we note that other courts have refused to limit the meaning of this phrase in a professional liability policy to clients of the insured professional. *See Continental Casualty Co. v. Cole*, 809 F.2d 891, 896 (D.C.Cir.1987). Since the meaning of "to others" is subject to more than one reasonable interpretation, we find the phrase patently ambiguous and will construe this portion of the policy against the insurer. We find that the phrase "to others" does not necessarily exclude from coverage acts performed by Biborosch in furtherance of his duties as general agency manager. *Standard Venetian Blind Co. v. American Empire Ins. Co.*, 503 Pa. 300, 469 A.2d 563 (1983).

Transamerica seeks to avoid the interpretation of its policy set forth above by making what is basically one argument. Transamerica strenuously argues that it would be error to conclude that the Jewell complaint falls within the potential coverage of the policy because Biborosch's actions in terminating Jewell were clearly related to "running the business" of the agency and were not, therefore, "professional" in nature. In making this argument, Trans-

america does not focus on the precise language of its policy, but rather on certain case law from the federal courts and other jurisdictions in which the phrase "professional services" has been defined to exclude purely business decisions by certain professionals.[1] These cases, Transamerica argues, make it clear that terminating an employee is not a "professional" act within the meaning of the phrase professional services.

One of the authorities urged upon us by Transamerica is the decision of the Court of Appeals for the Third Circuit in *Harad v. Aetna Casualty and Surety Co.*, 839 F.2d 979 (3d Cir.1988). In *Harad*, the insured was an attorney who represented an insurance company. In connection with this representation, the attorney signed a verification to an answer and counterclaim on behalf of his client and was then sued for malicious prosecution. The attorney sought a defense from Aetna, his business owner's policy insurer, who refused. Aetna relied on an exclusion in its policy which excluded injuries arising out of the rendering of professional services. The Third Circuit held that the attorney's signing of the answer was clearly within the exclusion. In doing so, the court referred with approval to the following definition of "professional services":

> Something more than an act flowing from mere employment or vocation ... [t]he act or service must be such as exacts the use or application of special learning or attainments of some kind. The term "professional" ... means something more than mere proficiency in the performance of a task and implies intellectual skill as contrasted with that used in an occupation for production or sale of commodities. A "professional" act or service is one arising out of a vocation, calling, occupation, or employment involving specialized knowledge, labor, or skill, and the

---

**1.** Transamerica relies on decisions from the federal courts and other jurisdictions because Pennsylvania courts have not directly addressed the issue presented here. In fact, Pennsylvania case law regarding the meaning of "professional services" is exceedingly sparse. *See, e.g., Danyo v. Argonaut Ins. Cos.*, 318 Pa.Super. 28, 464 A.2d 501 (1983); *Knorr v. Commercial Casualty Ins. Co.*, 171 Pa.Super. 488, 90 A.2d 387 (1952).

labor or skill involved is predominantly mental or intellectual, rather than physical or manual. In determining whether a particular act is of a professional nature or a "professional service" we must look not to the title or character of the party performing the act, but to the act itself.

*Id.* at 984 (citing *Marx v. Hartford Accident and Indemnity Co.,* 183 Neb. 12, 13–14, 157 N.W.2d 870, 871–72 (1968)).

The *Harad* court further explained the latter part of this definition, which requires that the analysis focus on the particular act in question, as follows:

... the practice of law, as other similarly regulated professional activity in today's world, has two very different and often overlooked components—the professional and the commercial. The professional aspect of a law practice obviously involves the rendering of legal advice to and advocacy on behalf of clients for which the attorney is held to a certain minimum professional and ethical standards. The commercial aspect involves the setting up and running of a business, i.e., securing office space, hiring staff, paying bills and collecting on accounts receivable, etc., in which capacity the attorney acting as businessperson is held to the same reasonable person standard as any other.

*Id.* at 985.

Transamerica argues that this, and similar language in certain other cases, compels the conclusion that personnel decisions and actions are not professional in nature.[2] While we might agree with the statements of the *Harad* court in a case that presented the same issue as was presented there,

---

**2.** None of the cases cited by Transamerica in this regard are binding on us in that none of them were decided by Pennsylvania courts. The cited cases are: *Harad, supra; Niagara Fire Ins. Co. v. Pepicelli, Pepicelli, Watts and Youngs, P.C.,* 821 F.2d 216 (3d Cir.1987); *Pacific Indemnity Co. v. Linn,* 766 F.2d 754 (3d Cir.1985); *Blumberg v. Guarantee Ins. Co.,* 192 Cal.App.3d 1286, 238 Cal.Rptr. 36 (1987); *Transamerica Ins. Co. v. Sayble,* 193 Cal.App.3d 1562, 239 Cal.Rptr. 201 (1987); *International Surplus Lines Ins. Co. v. Seagrave House, Inc.,* 572 So.2d 933 (Fla.App.1990); *Schiff Associates Inc. v. Flack,* 51 N.Y.2d 692, 435 N.Y.S.2d 972, 417 N.E.2d 84 (1980).

we nevertheless do not agree that the *Harad* court's observations are apposite to this case. *Harad* did not involve the policy at issue here, which contains its own expansive definition of "professional services," specifically including all acts "necessary or incidental" to the conduct of the insured's insurance business and administration in connection therewith. More importantly, neither *Harad* nor any of the other similar cases cited by Transamerica construe policies that insure against liability arising from the performance of the profession of general manager of a business. Unlike the policies in the cited cases, which insured lawyers when acting as lawyers, or doctors when acting as doctors, this policy insures Biborosch when acting as insurance broker *and* when acting as general manager pursuant to contract with Penn. This policy defines being a general manager of an agency as a covered profession and terminating contracts with soliciting agents like Jewell is clearly an act performed in pursuing that profession.[3]

Therefore, we find that Transamerica does have a duty to defend Biborosch in the Jewell action.

## II. *Industrial Indemnity Policy.*

■ The Industrial Indemnity policy provides, in pertinent part, that the insurer will provide the following coverage:

**3.** Transamerica also argues, in a two paragraph footnote bereft of supporting citations, that the exclusion in its policy for "any act, error, omission or personal injury of the insured committed with dishonest, fraudulent, criminal or malicious purpose or intent...." precludes a finding that Transamerica owes a duty to defend against the Jewell action. This argument is based on the fact that the Jewell complaint alleges that the discharge of Jewell was malicious and motivated by ill will.

We reject this argument as summarily as Transamerica has made it. Clearly the Jewell complaint alleges not only malicious acts by Biborosch, but also breach of contract and other acts that are simply labelled as being "wrongful" or in violation of "public policy" or in breach of a duty of "good faith and fair dealing." This is not a complaint that could possibly be construed to plead exclusively dishonest, fraudulent, criminal or malicious acts such as to bring the entire Jewell action so clearly within the above-quoted exclusion that a duty to defend would not arise.

To pay on behalf of the insured all sums which the insured shall become obligated to pay as damages because of any claims first made against the insured during the policy period, arising out of:

(A) Any act, error or omission of the insured, or any person for whose acts the insured is legally liable in the rendering or failing to render professional services for others in the conduct of the named insured's profession as life underwriter, licensed life, accident and health insurance general agent or manager, licensed life, accident and health insurance broker or notary public;

(B) Personal injury caused by an offense arising out of the rendering or failing to render professional services for others in the conduct of the named insured's profession under coverage (a) above including public relations activity;

(C) Any failure in rendering or failing to render professional services under the Employee Retirement Income Security Act of 1974, ERISA, and any amendments thereto which occurs in the conduct of the named insured's profession under coverage (a) above, other than as a named fiduciary.

Although this policy provision is markedly different from the Transamerica coverage provisions in that this provision does not define the phrase "professional services," it is equally clear that the Jewell complaint potentially falls within this provision and, therefore, that Industrial Indemnity also has the duty to defend. The major premise on which our holding regarding the Transamerica policy rests is that the Transamerica policy insures Biborosch in his profession as general agency manager and that terminating Jewell was done in furtherance of that profession. The Industrial Indemnity policy also insures Biborosch specifically in his profession as general agency manager. Therefore, the arguments set forth above in regard to finding a duty to defend by Transamerica apply equally here.

Moreover, we note that where a professional liability policy does not contain its own definition of "professional

services," courts sitting in Pennsylvania have found that the phrase can well be regarded as ambiguous and, therefore, must be construed against the insurer. For example, in *Danyo v. Argonaut Ins. Cos.*, 318 Pa.Super. 28, 464 A.2d 501 (1983), a doctor insured under a professional liability policy that contained the undefined phrase "professional services" was sued by an attorney representing one of the doctor's former patients. The suit alleged that the doctor had failed to prepare certain reports and testify in the former patient's lawsuit for personal injuries sustained in an automobile accident. The insurer argued that it had no duty to defend the doctor since the claims against him did not arise out of the rendering or failing to render professional services. *Id.*

A panel of this court found that the phrase "professional services" as used in that policy was ambiguous. The court emphasized that the policy specifically referred to the fact that professional services included service by the insured as a member of professional boards or committees and found that this suggested that actions beyond the treatment of patients could well be within the coverage of the policy. Thus, the court construed the policy against the insurer and found that the insurer did have a duty to defend the doctor. *Id.*, 318 Pa.Superior Ct. at 30–32, 464 A.2d at 502–03. *See also Pacific Indemnity Co. v. Linn*, 766 F.2d 754 (3d Cir.1985) (Third Circuit finds phrase "professional services" ambiguous because susceptible to more than one reasonable interpretation).

In light of these cases, it is clear that the use of the undefined phrase "professional services" may well give rise to a finding of ambiguity. This lends further support to our conclusion that Industrial Indemnity has the duty to defend the claims in the Jewell action. Certainly this policy can reasonably be construed to cover actions by Biborosch in his insured professional capacity as general manager of the agency in connection with the personnel who worked in that agency. Since this is at minimum one reasonable interpretation of the policy's coverage provisions, it is the one we must adopt for purposes of analyzing the insurer's

duty to defend. Therefore, we find that Industrial Indemnity has the duty to defend.[4]

## III. *Employers Reinsurance Policy*

[4] The Employers Reinsurance Policy contains the following pertinent coverage provisions:

The Corporation does hereby agree to pay on behalf of the Insured such loss in excess of the applicable deductible stated and within the limit of liability specified in the Declarations sustained by the Insured by reason of liability imposed by law for damages caused by:

(a) any negligent act, error or omission of the Insured or any person for whose acts the Insured is legally liable, or

(b) any claim for liable, slander, invasion of privacy, false arrest, detention or imprisonment, or wrongful entry or eviction against the Insured, arising out of the conduct of the business of the Insured in rendering professional services for others as a life and accident & health insurance agent, broker, general agent or manager and including activities as an insurance consultant and any advertising activities, as respects claims first made against the Insured and reported to the Corporation during the policy period.

... the term "professional services" shall mean those services rendered to others as a life and accident & health insurance agent, broker, general agent, manager, consultant or analyst including but not limited to services with respect to:

1. life insurance, insurance annuities, accident & health insurance, hospitalization or medical insurance plans ... and health maintenance organizations ...; [and]

2. variable annuities, variable life insurance contracts providing for participation in life insurance company separate investment accounts;

4. Industrial Indemnity joins Transamerica in its argument concerning the applicability of the criminal or malicious acts exclusion discussed in footnote 3, *supra,* which also appears in the Industrial Indemnity policy. Our disposition of that argument as to Transamerica applies with equal force to Industrial Indemnity.

As in the case of the Transamerica policy, the Employers Reinsurance policy contains its own broad definition of professional services and specifically includes Biborosch's profession as a general agency manager in its list of insured professions. Thus, our analysis of the Transamerica policy applies with equal force here and Employers Reinsurance's duty to defend the claims in the Jewell complaint is equally clear. Indeed, the precise phraseology of this policy may well be read as even more clearly encompassing actions by Biborosch in connection with personnel management in furtherance of his duties as general manager of the agency because this policy's definition of professional services itself includes services rendered as a general manager. Thus, whereas the Transamerica policy includes general manager as an insured profession, this policy does that *and also* refers specifically to this profession in the definition of professional services.

■ Employers raises certain additional arguments, however, in support of its position that it has no duty to defend the Jewell action. These arguments are based on the fact that the Employers policy only covers "negligent" acts and contains the following two exclusions from coverage:

(a) any dishonest, fraudulent, criminal or malicious act, or assault and battery;

. . . .

(i) claims by a firm, enterprise or joint venture which is operated, owned or otherwise controlled by an Insured or which operates, owns or otherwise controls an Insured.

We are not persuaded that the use of the phrase "negligent act, error or omission" in the Employers' policy so restricts the coverage provided as to necessarily exclude the claims asserted in the Jewell complaint from potentially falling within that coverage. Nor do we find that either of the above-quoted clauses so clearly applies to those claims as to preclude them from falling within the coverage of the policy.

We begin our analysis of these arguments by reiterating a well-established principle of law. That principle states that where "... there are two separate causes of action and one would constitute a claim within the scope of the policy's coverage, the insurer has a duty to defend until it can confine the claim to a recovery excluded from the scope of the policy." *Seaboard Industries, Inc. v. Monaco,* 258 Pa.Super. 170, 392 A.2d 738, 743 (1978). Thus, in order to find a duty to defend, we need not find that every claim asserted in the complaint filed against the insured is within the potential coverage of the policy. Rather we need only determine if any of the claims asserted are potentially covered. If any are, the insurer must defend until the suit is narrowed only to claims that are definitely not within that coverage.

Applying that principle here, we can easily conclude that at least some of the claims asserted in the Jewell complaint would not fall within the cited exclusions and, moreover, that at least some of those claims could be characterized as alleging negligent acts within the coverage of the Employers policy.

The Employers policy exclusion for dishonest, fraudulent, criminal or malicious acts certainly does not clearly exclude all of the claims in the Jewell complaint from potential coverage. As we have stated in footnote 3, *supra,* clearly the Jewell complaint cannot be read as pleading only causes of action that hinge on malicious or dishonest behavior by Biborosch. For example, the breach of contract count does not at all hinge on proof of maliciousness. Ill will or malice is not an element of a cause of action for breach of contract and Jewell does not plead it as such in the breach of contract count. The fact that Jewell alleges that Biborosch did act maliciously in other counts of the complaint is extraneous to recovery for breach of contract. Jewell may well succeed in proving breach of contract because of a negligent act without ever establishing malice on Biborosch's part and that recovery may well fall within the coverage of the policy. Nor do Jewell's allegations of a

breach of the duty of good faith and fair dealing necessarily hinge on proof of maliciousness. As the Court of Appeals for the District of Columbia has aptly stated in rejecting a similar claim based on a malicious acts exclusion:

> ... [an insurer] cannot refuse to defend an otherwise appropriate complaint because of some language in the complaint which may be merely "puffing" and which scrutiny reveals is not essential to the complaint.

*Continental Casualty Co. v. Cole,* 809 F.2d 891, 897 (D.C.Cir.1987) (quoting *Sacks v. St. Paul Fire and Marine Ins. Co.,* 303 F.Supp. 1339, 1341 (D.D.C.1969)).

Equally, the Employers policy's coverage of only "negligent acts, errors or omissions" does not clearly exclude all of the claims in the Jewell complaint. As we have previously indicated, we determine an insurer's duty to defend from the face of the complaint in the underlying action and we must construe the complaint against the insurer, resolving all doubts in favor of coverage. Here, the Jewell complaint itself labels the wrongful acts asserted as being, *inter alia,* "grossly negligent." In addition, the last count of the complaint pleads a general breach of duty by Biborosch in his dealings with Jewell. At this early stage in the underlying action, and based only upon the face of the complaint, we cannot say that there is no possibility that Jewell might recover damages based upon what were essentially negligent acts, errors or omissions by Biborosch in connection with his treatment of Jewell.

In this regard, we find the Supreme Court of Pennsylvania's analysis in the case of *Cadwallader v. New Amsterdam Cas. Co.,* 396 Pa. 582, 152 A.2d 484 (1959), to be particularly instructive. In *Cadwallader,* the insured, Cadwallader, was a lawyer. He was sued by Mencher, another lawyer, who alleged that Cadwallader had breached an agreement with Mencher pursuant to which Cadwallader was to hold in escrow and then remit to Mencher a portion of certain condemnation proceeds on property owned by a joint client of the two. This portion of the condemnation proceeds was owed by the client to Mencher for previously

rendered legal services. Mencher's complaint alleged both a breach of undertaking and a conspiracy to defraud.

Cadwallader sought a defense from his professional liability insurer, who refused. The insurance policy insured Cadwallader against claims made against him arising out of the performance of professional services and caused by any "negligent act, error or omission" by Cadwallader. It also excluded claims arising from malicious or fraudulent acts. After the underlying action was settled, Cadwallader sued his insurer for his costs of defense and for indemnity. The trial court found that Cadwallader had negligently failed to transmit the funds to Mencher, due to an error by Cadwallader's associate.

The *Cadwallader* court held that the insurer did have the duty to defend. It analyzed Mencher's complaint as pleading two causes of action—breach of an undertaking and unlawful conspiracy and fraud. Although the court found that the second was excluded from coverage, it further found that from the face of the complaint the first claim may well have fallen within the coverage of the policy and, therefore, that the insurer had erred in refusing to defend it. As to that claim, and the duty to defend, the court stated:

> ... [this cause of action] ... would be one which may or may not have come within the coverage of Cadwallader's insurance policy with the defendant. It would be within the coverage of the policy if the violation of this agreement was due to a negligent act, error or omission. If, however, the violation was due to a dishonest, fraudulent, criminal or malicious act or omission it would not be covered.
>
> It is clear that where a claim potentially may become one which is within the scope of the policy, the insurance company's refusal to defend at the outset of the controversy is a decision it makes at its own peril.
>
> ....
>
> ... Mencher's pleading fix[ed] the insured's right in this case.... In this case, the complaint filed by Mencher

contained two separate causes of action, one for simple breach of the undertaking and the other for conspiracy. If the one for the breach of the undertaking is due to a negligent act or omission this would constitute a claim within the scope of the policy and ... "... It was the duty of the defendant to undertake the defense until it could confine the claim to a recovery that the policy did not cover."

*Id.*, 396 Pa. at 589–91, 152 A.2d at 488–89 (quoting *Lee v. Aetna Casualty & Surety Co.*, 178 F.2d 750 (2d Cir.1949).

Similarly, we conclude that the allegations of the Jewell complaint are broad enough to encompass possible negligence by Biborosch. Thus, we do not find that the Employers policy's "negligent act, error or omission" language can be construed as absolutely barring any possible recovery by Jewell from coverage.

Lastly, we are hard pressed to find even arguable merit in Employers' contention that exclusion (i) applies to exclude the claims asserted in the Jewell complaint. This exclusion operates to exclude from coverage claims by a firm, enterprise or joint venture which is owned, operated or controlled by an insured or which operates, owns or controls an insured. The insured under this policy is Biborosch in his individual capacity. The claims being made by Jewell are made by him as an individual. There is absolutely no evidence in the record to support the contention that Jewell's claims are made by Jewell on behalf of any "firm, enterprise or joint venture" that was owned, operated or controlled by Biborosch. Nor is there anything to suggest that Jewell's claims are made on behalf of a firm, enterprise or joint venture that owned, operated or controlled Biborosch. We find no support for finding this exclusion applicable to any of Jewell's claims.

In conclusion, we find that the claims noted in the Jewell action may potentially fall within the coverage of each of the three policies involved. Thus, all three insurers have the duty to defend. The order of the trial court is affirmed.

TAMILIA, J., files a dissenting opinion.

TAMILIA, Judge, dissenting:

This appeal was taken from the Order of the trial court directing appellant liability insurers, Transamerica Insurance Company, Industrial Indemnity Company and Employers Reinsurance Corporation, to defend an action on behalf of Richard Biborosch, t/a The R.F. Biborosch Agency, against a discharged employee who was a soliciting agent.

I believe the trial court and the majority on the panel have completely misconstrued the terms of the contracts subject to this suit and have found liability where none exists.

The essence of the various contracts analyzed and discussed in this case was to protect the agency from losses incurred because of defects, negligence and failures in fulfilling its *professional* responsibility to clients and policy holders enrolled by the agency. They carry most if not all the elements of professional malpractice insurance. Under no reasonable interpretation can any of the policies be construed to require the appellants to defend an action arising out of termination of an employee/agent due to alleged malfeasance or fraud *against* the *agency*. Such a termination is pursuant to the business or employment relationship between the agent and *Biborosch* and not the professional dealings of the agency as represented by the managers or agent to the public.

Contracts are intended to be read in such a fashion as to avoid ambiguity. Here, reviewing each of the contracts and sections covering liability of the insurers, it is beyond question that the terms "professional" and "professional services" apply to the activities of employees of the agency as they relate to the service provided to the clients. As in any undertaking, those who hold themselves out to the public as proficient and competent to perform a service can be held liable for failure to provide the service pursuant to an acceptable standard.

This is particularly true in an endeavor which is licensed by the Commonwealth and which requires a degree of

competence and ability, with knowledge and skills that bring it within the framework of a profession. Professional standards are clearly and specifically ascertainable whether it be in law, medicine, insurance or real estate brokerage, education or social services to mention a few. The provisions of these policies, which are the focus of this case, are geared to protect the agency from claims of insureds for some dereliction of duty to hire competent managers and agents and to train, supervise and maintain professional standards and conduct of the agents and managers of the insurance agency. This coverage is essential because the agency becomes liable to third parties, their insureds, when the third party suffers a loss because of the professional failure of the agents or managers of the agency.

Even the strained construction suggested by the majority cannot bring the termination of an employee, allegedly breaking his employment contract with the agency, and an action for wrongful discharge, within the contractual undertaking by appellant insurers. This is not a breach of duty by an agent to a client, intended to be defended against by the policy, but a simple employment contract, the breach for which, if it occurred, is not covered by the policies in question.

The involved and circuitous discussion of *professional* accountability in the context of this case is unconnected to the language in the policy. Appellants cite abundant law in their briefs interpreting *professionalism* and its application to the contracts in question, all of which support the conclusion that they are not required to defend Biborosch in the action by its terminated employee against it. I would reverse the trial court and dismiss the case.