**Jack SCLABASSI and Mariko Sando, Appellants**

v.

**NATIONWIDE MUTUAL FIRE INSURANCE COMPANY, Appellee.**

Superior Court of Pennsylvania.

Argued Oct. 24, 2001.

Filed Dec. 17, 2001.

---

David M. Priselac, Pittsburgh, for appellants.

Christopher Lee, Pittsburgh, for appellee.

BEFORE: DEL SOLE, President Judge, FORD ELLIOTT and ORIE MELVIN, JJ.

DEL SOLE, President Judge:

¶ 1 This is an appeal from the order dated October 20, 2000, in the Court of Common Pleas of Allegheny County, which sustained Appellee's preliminary objections to Appellants' action in assumpsit. Upon review, we affirm.

¶ 2 The relevant facts and procedural history are as follows. Appellants, Jack Sclabassi and his wife, Mariko Sando, filed suit against their insurance company, Nationwide Mutual Fire Insurance Company, Appellee, for reimbursement of legal fees and other expenses incurred by Appellants in defense of a law suit brought by Mr. and Mrs. Giegucz.

¶ 3 On September 17, 1993, Appellants sold their residence to the Gieguczs. On November 11, 1995, an act of vandalism occurred causing damage to a nearby sewer owned by the Borough of Dormont across from the Gieguczs' residence. The damage to the sewer caused water and sewer damage to the basement of the Gieguczs' residence for which they claimed to have incurred significant expenses in repairs. They also claimed to have suffered various physical ailments and emotional distress. When their insurance company denied coverage, the Gieguczs filed suit against the company and various other parties, including Appellants. They settled their claims with all parties except Appellants. The trial court granted a compulsory nonsuit in favor of Appellant, Mariko Sando, and the jury returned a verdict in favor of Appellant, Jack Sclabassi.

¶ 4 Three counts in the complaint brought by the Gieguczs, counts XIII, XIV and XV, alleged claims against Appellants. In count XIII they alleged fraud and deceit on the part of Appellants with regard to representations made in the Seller's Disclosure Statement. They alleged that Appellants falsely and intentionally repre-

sented that the property was served by a public sewer instead of a private sewer, and that Appellants had knowledge of the condition of the sewer line, necessary maintenance costs and potential liability to the Gieguczs if the sewer line caused contamination. The Gieguczs further alleged that Appellants falsely represented that only minor dampness occurred in the basement of the residence when there had been sewage overflows in the past, which would likely reoccur in the future. Also, they alleged that Appellants falsely stated that no violations of local regulations existed when a sump pump had been improperly connected to the sewer line. In count XIV, the Gieguczs incorporated count XIII, and alleged that Appellants caused them to suffer discomfort and inconvenience as a direct result of the misrepresentations. The Gieguczs indicated they suffered damages in that they were unable to use their basement and appliances, were required to use a laundromat, and suffered loss of sleep, headaches, nausea and emotional stress. In count XV, the Gieguczs incorporated counts XIII and XIV, and alleged that the fraudulent misrepresentations made by Appellants constituted intentional infliction of emotional distress.

¶ 5 Appellants sought coverage from Appellee in the above lawsuit. Initially, Appellee appointed counsel to represent them, pursuant to a reservation of rights letter. However, Appellee later declined to provide coverage after determining that the claim was not covered by Appellants' policy.

¶ 6 Appellants then filed an action against Appellee claiming a violation of Pennsylvania's bad faith statute. Appellee filed preliminary objections and both parties filed supplemental pleadings. Following a hearing on the pleadings, the trial court granted Appellee's preliminary objections and dismissed Appellants' claim with prejudice. This appeal followed.

¶ 7 Herein, Appellants raise the following issues for our consideration:

1. Did the underlying complaint against the insureds aver facts which support the conclusion that there had been an "occurrence" as defined by the policy of insurance?
2. Did the underlying complaint against the insureds aver facts which support the conclusion that the insureds "expected or intended" the injuries suffered by the plaintiffs in the underlying complaint?

Appellant's Brief at 4.

■ ¶ 8 Our standard of review for an order granting a preliminary objection in the nature of a demurrer is as follows:

■ ¶ 9 All material facts set forth in the pleading at issue as well as all inferences reasonably deducible therefrom are admitted as true. *CoreStates Bank, N.A. v. Cutillo,* 723 A.2d 1053, 1057 (Pa.Super.1999). The question presented by the demurrer is whether, on the facts averred, the law says with certainty that no recovery is possible. *Id.* Where a doubt exists whether a demurrer should be sustained, this doubt should be resolved in favor of overruling it. When reviewing a grant of demurrer, "we are bound neither by the inferences drawn by the trial court, nor by its conclusions of law." *Id.* Our scope of review is plenary. *Id.*

¶ 10 A preliminary objection in the nature of a demurrer will be granted where the contested pleading is legally insufficient. *See* Pa.R.C.P. 1028(a)(4). "Preliminary objections in the nature of a demurrer require the court to resolve the issues solely on the basis of the pleadings; no testimony or other evidence outside of the complaint may be considered to dispose of the legal issues presented by the demur-

rer." *Williams v. Nationwide Mut. Ins. Co.*, 750 A.2d 881, 883 (Pa.Super.2000).

¶ 11 Appellants argue they are entitled to reimbursement for expenses incurred in defense against the suit brought by the Gieguczs because the vandalism to the sewer line, which in turn damaged the Gieguczs' residence, constituted an "occurrence," and therefore Appellee was obligated to defend them under their insurance policy. They concede that Appellee would have had no duty to defend them if the only claims for damages had been those for economic losses caused by the alleged misrepresentations. They argue however, that, because those damages represented only a portion of the case, Appellee had a duty to defend them until the claim for damages caused by vandalism was dismissed. We disagree and find that none of the claims against Appellants were covered by the policy.

■ ¶ 12 In *General Accident Ins. Co. of Am. v. Allen*, 547 Pa. 693, 692 A.2d 1089 (1997), our Supreme Court explained that it is not necessary for an insurer to defend all claims against an insured. Rather, to determine the insurer's duty to defend we must look to the claims made in the complaint. We restated the analysis to be applied when determining whether an insurance company has a duty to defend in *Redevelopment Auth. v. International Ins. Co.*, 454 Pa.Super. 374, 685 A.2d 581 (1996):

> The duty to defend is a distinct obligation, separate and apart from the insurer's duty to provide coverages. *Erie Ins. Exchange v. Transamerica Ins. Co.*, 516 Pa. 574, 582, 533 A.2d 1363 (1987). Moreover, the insurer agrees to defend the insured against any suit arising under the policy "even if such suit is groundless, false, or fraudulent." *Gedeon v. State Farm Mutual Automobile Ins. Co.*, 410 Pa. 55, 56, 188 A.2d 320,

321 (1963). Since the insurer agrees to relieve the insured of the burden of defending even those suits which have no basis in fact, the obligation to defend arises whenever the complaint filed by the injured party may potentially come within the coverage of the policy. *Id.; see also Wilson v. Maryland Cas. Co.*, 377 Pa. 588, 105 A.2d 304 (1954); *Biborosch v. Transamerica Ins. Co.*, 412 Pa.Super. 505, 603 A.2d 1050 (1992); *Youngman v. CNA Ins. Co.*, 401 Pa.Super. 381, 585 A.2d 511 (1991). In order to determine whether a claim may potentially come within the coverage of the policy, we must first ascertain the scope of the insurance coverage and then analyze the allegations in the complaint. *Biborosch*, 412 Pa.Super. at 509, 603 A.2d at 1052 (1992) (citing *Cadwallader v. New Amsterdam Casualty Co.*, 396 Pa. 582, 152 A.2d 484 (1959)).

*Id.* at 589 (citing *Britamco Underwriters v. Grzeskiewicz*, 433 Pa.Super. 55, 639 A.2d 1208, 1210 (1994)); *see also Snyder Heating Co. v. Pennsylvania Mfrs. Ass'n Ins. Co.*, 715 A.2d 483 (Pa.Super.1998) (the terms of an insurance policy must be compared to the nature of the allegations in the complaint in order to determine whether, if the allegations are sustained, the insurer would be obligated to incur the expense of the judgment); *Creed v. Allstate Ins. Co.*, 365 Pa.Super. 136, 529 A.2d 10 (1987) (the duty to defend is limited to those situations where the complaint against the insured alleges facts which, if they were true, would bring the claim within the insurance policy's coverage); *D'Auria v. Zurich Ins. Co.*, 352 Pa.Super. 231, 507 A.2d 857 (1986) (the nature of the claim, rather than the actual details of any injuries suffered by the insured, determines whether the insurer is required to defend).

¶ 13 Thus, we begin our analysis by reviewing the relevant portions of Appellants' policy to ascertain the scope of the insurance coverage. The relevant portions provide:

2. Liability Coverage

Coverage E—Personal Liability

We will pay damages the insured is legally obligated to pay due to an occurrence.

Definitions

9. "Occurrence" means bodily injury or property damages resulting from

(a) one accident; or

(b) continuous or repeated exposure to the same general condition.

■ ¶ 14 Next, we turn to the allegations in the complaint to determine whether any of the claims against Appellants fall within the definition of "occurrence" as defined by the policy. In count XIII the Gieguczs alleged fraud and deceit on the part of Appellants with regard to representations made in the Seller's Disclosure Statement. In count XIV, the Gieguczs alleged that Appellants caused them to suffer discomfort and inconvenience as a direct result of the misrepresentations, and in count XV, the Gieguczs alleged that the fraudulent misrepresentations made by Appellants constituted intentional infliction of emotional distress.

¶ 15 We find that none of these allegations involve an "accident" or "continuous or repeated exposure to the same general condition" as contemplated under the definition of occurrence in the policy. Rather, the allegations were that Appellants were liable for intentional misrepresentations regarding statements made about the sewer during the sale of the residence.[1] The Gieguczs alleged Appellants misrepresented the condition of the sewer, the fact that it was private and required maintenance expenses, the existence of an illegal sump pump on the premises and the fact that there had been more than minor dampness in the basement.

■ ¶ 16 Intentional acts are not "occurrences." The fact that the vandalism may have precipitated the allegations of intentional misrepresentation does not lead us to conclude that there was an "occurrence" for which Appellee was required to defend Appellants.[2] See Gene & Harvey Builders, Inc. v. Pennsylvania Mfrs' Asso. Ins. Co., 512 Pa. 420, 517 A.2d 910 (1986) (the alleged intentional concealing of the condition of the land or the alleged intentional misrepresentation are not "occurrences" under the policy, for an intentional act is not an accident (and only accidents are covered)). Therefore, because the allegations involved intentional acts and not "occurrences," they were not covered by the policy. Consequently, Appellee had no duty to defend Appellants.

¶ 17 Order affirmed.

---

1. Obviously, the Gieguczs did not allege that Appellants caused or were responsible for the vandalism to the sewer which damaged their basement, and it is undisputed that coverage cannot be triggered by an occurrence to a third party unless Appellants are alleged to be responsible for the occurrence.

2. We recognize that if there are multiple causes of action and one would potentially constitute a claim within the scope of the policy's coverage, the insurer would have a duty to defend until it could confine the claim to a recovery excluded from the policy. Stidham v. Millvale Sportsmen's Club, 421 Pa.Super. 548, 618 A.2d 945, 953 (1992). However, none of the claims against Appellants in the underlying complaint fall within the scope of the policy's coverage.