NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 08-1522
_____

LAFAYETTE COLLEGE,
                                        Appellant

v.

SELECTIVE INSURANCE COMPANY;
UNITED STATES FIRE INSURANCE COMPANY
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
D.C. Civil Action No. 06-cv-05459
(Honorable Juan R. Sanchez)
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
November 7, 2011

Before:  SCIRICA, SMITH and JORDAN, *Circuit Judges*.

(Filed:  November 10, 2011)
_____

OPINION OF THE COURT
_____

SCIRICA, *Circuit Judge*.

David Beil and his wife brought suit in the Philadelphia Court of Common Pleas

against Appellant Lafayette College for personal injuries resulting from a fall.  Lafayette

filed suit against Appellees United States Fire Insurance Company ("U.S. Fire") and

Selective Insurance Company of America ("Selective") seeking a declaratory judgment

that U.S. Fire owed a duty to defend and that the coverage provided by Selective was primary. The United States District Court for the Eastern District of Pennsylvania entered summary judgment for the Appellees. It held U.S. Fire did not owe Lafayette a duty to defend because the Beils' complaint did not allege vicarious liability. It also held the Selective policy provided excess insurance. We will reverse in part, affirm in part, and remand.

I.

In early 2002, Lafayette College hired general contractor Telesis Construction, Inc. to renovate a portion of its campus. As required under the parties' contract, Telesis obtained insurance that listed Lafayette as an additional insured. The U.S. Fire policy it purchased provided limited liability coverage to additional insureds such as Lafayette: "That person or organization is only an additional insured with respect to liability caused by your negligent acts or omissions at or from your ongoing operations performed for the additional insured at the job indicated by written contract or written agreement."

Telesis subcontracted some of the renovation work to Alan Kunsman Roofing & Siding, Inc. Kunsman agreed in the subcontract to indemnify Telesis for breach of contract or negligence and incorporated the contract between Telesis and Lafayette. Kunsman obtained an insurance policy from Selective that provided, in relevant part:

> This coverage shall be primary and not contributory with respect to the person or organization included as an insured by its provisions; any other insurance that person or organization has shall be excess and not contributory with respect to this insurance, but this provision only applies if it is required in the contract, agreement, or permit referred to above.

On June 13, 2003, David Beil, a Kunsman employee, fell from scaffolding at the

2

worksite. He and his wife sued Lafayette, Telesis, Masonry Preservation Services, Inc., and the scaffolding manufacturer in the Philadelphia Court of Common Pleas, alleging joint and several liability for Beil's injuries. The jury ultimately awarded a verdict in the amount of $6.8 million and held Lafayette responsible for 35% of the judgment.[1] Before and during the trial, Lafayette repeatedly tendered defense of the claim to U.S. Fire and Selective, both of which denied coverage. Lafayette then brought this suit seeking a declaratory judgment and monetary relief for U.S. Fire's failure to defend and Selective's failure to provide primary coverage.

The District Court entered summary judgment for U.S. Fire and Selective. It held that the Beils' complaint did not allege vicarious liability that would be covered under Lafayette's "additional insured" status in the U.S. Fire policy. It also determined that Lafayette's coverage under the Selective policy was excess, not primary. Lafayette appealed.

## II.[2]

We exercise plenary review over the District Court's grant of summary judgment. *Tri-M Group, LLC v. Sharp*, 638 F.3d 406, 415 (3d Cir. 2011). Under Pennsylvania law, which governs this diversity case, the interpretation of an insurance contract is a question of law. *401 Fourth St., Inc. v. Investors Ins. Grp.*, 879 A.2d 166, 170 (Pa. 2005). We

---

[1] On appeal, the Pennsylvania Superior Court reversed, determining that Lafayette was not liable as a matter of law and remanding for entry of a judgment notwithstanding the verdict. The Pennsylvania Supreme Court affirmed. Lafayette now seeks only the cost of the defense.

[2] The District Court had jurisdiction over this diversity case under 28 U.S.C. § 1332. We exercise jurisdiction over this appeal under 28 U.S.C. § 1291.

3

give effect to the clear and unambiguous language of an insurance policy as a manifestation of the parties' intent. *Donegal Mut. Ins. Co. v. Baumhammers*, 938 A.2d 286, 290 (Pa. 2007). When the policy provision is ambiguous, we construe the policy in favor of the insured, since the insurer drafts the policy. *Id.*

## A.

An insurer's duty to defend is a distinct obligation under the policy, and is broader than its duty to indemnify. *Am. & Foreign Ins. Co. v. Jerry's Sport Ctr., Inc.*, 2 A.3d 526, 540-41 (Pa. 2010). The duty to defend is determined solely from the complaint against the insured, *Kvaerner Metals Div. of Kvaerner U.S., Inc. v. Commercial Union Ins. Co.*, 908 A.2d 888, 896 (Pa. 2006), and arises when the underlying complaint states a claim that is potentially within the scope of the policy, regardless of whether it is groundless, false, or fraudulent, *Gedeon v. State Farm Mut. Auto. Ins. Co.*, 188 A.2d 320, 321-22 (Pa. 1963). The factual allegations in the complaint, and not the particular cause of action pleaded, determine whether coverage has been triggered. *Mut. Benefit Ins. Co. v. Haver*, 725 A.2d 743, 745 (Pa. 1999). We construe the complaint liberally, with all doubts as to whether the claims fall within the coverage of the policy resolved in favor of the insured. *Biborosch v. Transamerica Ins. Co.*, 603 A.2d 1050, 1052 (Pa. Super. Ct. 1992).

The U.S. Fire policy unambiguously limits the liability owed the additional insured to "liability caused by [Telesis's] negligent acts or omissions," and so only covers Lafayette for vicarious liability arising from Telesis's actions. *See Harbor Ins. Co. v. Lewis*, 562 F. Supp. 800, 802-03 (E.D. Pa. 1983) (interpreting a similar additional insured

4

requirement as providing coverage only for vicarious liability).  Although the Beils' complaint claims Lafayette is jointly and severally liable rather than vicariously liable for Mr. Beil's injuries, this is not dispositive, since we look to the underlying facts rather than the legal theories advanced to determine coverage.  It is also not determinative that the complaint asserts some claims based on Lafayette's own negligence, since the duty to defend exists when *any* claim asserted is potentially covered.  *Biborosch*, 603 A.2d at 1057-58.

Lafayette contends that several provisions of the Biels' complaint allege facts suggesting liability based on the peculiar risk doctrine, which imposes vicarious liability on the employers of independent contractors when (1) a risk is foreseeable to the employer at the time of contract and (2) the risk is different "from the usual and ordinary risk associated with the general type of work done (that is, the specific project or task chosen by the employer involves circumstances that are substantially out-of-the ordinary)." *Chenot v. A.P. Green Servs., Inc.*, 895 A.2d 55, 64 (Pa. Super. Ct. 2006); Restatement (Second) of Torts § 416 (1965).  We agree.

Paragraphs 19 & 20 of the Beils' complaint claim that the defendants, including Lafayette, "knew or should have known that falls are one of the leading causes of fatalities and injuries at construction sites. . . ."  Although the District Court concluded that this language establishes that the risk was not "peculiar," it is more logical to read these averments, listed early in the complaint, as establishing the foreseeability of Beil's injuries.  Later paragraphs of the complaint allege facts that, if true, might satisfy the second prong of the peculiar risk test, including averments that the defendants exposed

5

plaintiff "to peculiar and unreasonable danger by refusing to permit workers to use the elevator and/or stairs inside the college to gain access to the roof and requiring workers such as plaintiff to climb more than 40 feet in the air on a vertically mounted scaffolding ladder without any fall protection," ¶ 23(y), and "to unreasonable and outrageous danger, by failing to use scaffolding that included an internal stairwell and necessary safety devices in an attempt to reduce construction costs" ¶ 23(ee) (emphasis removed). Although indicative of plaintiffs' intent, it is not the mere recitation of the word "peculiar" that converts these allegations into a claim based on "peculiar risk."[3] Rather, these facts, taken as true, establish a colorable claim that the conditions on the worksite went beyond the usual risks associated with construction work, and that the specific task chosen by the employer—repairing the roof without access to internal stairs or elevator— involved "out-of-the-ordinary" circumstances.[4]

---

[3] Two other of the Beils' averments also invoke the word "peculiar." ¶¶ 22(i),(j). U.S. Fire suggests the use of "peculiar" might relate to a claim under the employer's duty to provide for taking of precautions, Restatement (Second) of Torts § 413, which also employs the phrase "peculiar unreasonable risk" but is considered an instance of liability arising from the employer's own negligence. But the Restatement provides, "This Section states the rule as to the liability of the employer who fails to provide in the contract . . . that the contractor shall take the required precautions. As to the liability of the employer who does so provide, see § 416 [outlining the peculiar risk doctrine]." Restatement (Second) of Torts § 413 cmt. a. Since Section Eleven of the Construction Management Agreement between Telesis and Lafayette contains a lengthy provision outlining required safety measures, Restatement § 416, not § 413, applies. Moreover, even if § 413 might apply, any ambiguity about which doctrine the Beils invoked in the complaint must be resolved in favor of coverage.

[4] Although we confine ourselves to the four corners of the complaint and do not consider subsequent trial events, it is relevant to the interpretation of this language that the Philadelphia Court of Common Pleas relied on these precise facts in rejecting Lafayette's motion for a new trial, holding that the jury charge on the peculiar risk doctrine was appropriate since a reasonable jury could have found the doctrine applicable. Moreover,

Construing all doubts in favor of the insured, we conclude that the facts asserted in the Beils' complaint alleged Lafayette's liability under the peculiar risk doctrine. Although Pennsylvania caselaw suggests the Beils' case may be weak in this respect,[5] we do not determine the merits of the underlying claim, since an insurer must defend the insured even against groundless claims that would be covered under the policy. Because it is well established that the peculiar risk doctrine imposes liability vicariously, Restatement (Second) of Torts ch. 15, topic 2, intro. note, and the Beils' complaint could be read to assert claims under that doctrine, it fell within U.S. Fire's coverage of Lafayette as an additional insured. U.S. Fire accordingly violated the policy when it refused to defend Lafayette after receiving notice of the complaint.

B.

When the language of an insurance policy is clear and unambiguous, we must give the plain language effect. *Travelers Cas. & Sur. Co. v. Castegnaro*, 772 A.2d 456, 459 (Pa. 2001). The Selective insurance policy obtained by Kunsman states unequivocally that it is primary only when required "in the contract, agreement, or permit" made by the principal insured. There is no requirement in the agreement between Kunsman and Telesis that the insurance obtained be primary with respect to

---

had the Beils failed to allege facts that supported a claim for vicarious liability in their complaint, the introduction of such evidence and the charge to the jury without amendment of the complaint would have constituted a variance under Pennsylvania law. *See Reynolds v. Thomas Jefferson Univ. Hosp.*, 676 A.2d 1205, 1210 (Pa. Super. Ct. 1996) ("A new cause of action does arise . . . if the amendment proposes a different theory or a different kind of negligence than the one previously raised or if the operative facts supporting the claim are changed." (emphasis removed)).

[5] *See Lafayette Coll. v. Selective Ins. Co.*, No. 06-cv-5459, order at 1 n. 1 (E.D. Pa. Feb. 11, 2008).

Lafayette. The provision of the agreement requiring Kunsman to assume "all obligations placed upon Contractor by all Principal Contract Documents" extends under the plain terms of the contract only to "work," and not to insurance. Moreover, even if this provision did incorporate the insurance requirements of the Construction Management Agreement between Telesis and Lafayette into the contract between Telesis and Kunsman, those requirements state only that subcontractors such as Kunsman must maintain workers' compensation insurance. Since no relevant contractual provision states that the Selective insurance is primary, under the policy's plain terms the coverage is excess.

III.

For the foregoing reasons, we will reverse the District Court's grant of summary judgment with respect to claims against U.S. Fire and remand for proceedings consistent with this opinion. We will affirm the grant of summary judgment with respect to claims against Selective.