663 A.2d 753

**PHICO INSURANCE COMPANY**

**v.**

**PRESBYTERIAN MEDICAL SERVICES CORPORATION,**
**Delaware Valley Convalescent Homes, Inc.**

**Appeal of PRESBYTERIAN MEDICAL**
**SERVICES CORPORATION.**

Superior Court of Pennsylvania.

Argued May 23, 1995.

Filed Aug. 15, 1995.

222

Richard F. McMenamin, Philadelphia, for appellant.

Peter J. Mooney, Philadelphia, for Phico Ins., appellee.

Before CAVANAUGH, CIRILLO and HESTER, JJ.

HESTER, Judge:

Presbyterian Medical Services Corporation appeals from the order entered in the Court of Common Pleas of Bucks County on June 10, 1994, which granted summary judgment in favor of Phico Insurance Company. For the reasons set forth below, we affirm.

The procedural history of this case may be summarized as follows. On March 15, 1993, Phico filed a declaratory judgment complaint against both appellant and Delaware Valley Convalescent Homes, Inc. In that complaint, Phico alleged that the terms of a nursing home consulting agreement required appellant, its insured under a comprehensive liability policy, to provide Delaware Valley with certain advice and assistance. In addition, Phico asserted that the terms of the agreement precluded the recovery of consequential damages and limited appellant's liability to losses resulting from either gross negligence or willful misconduct. Phico also averred that Delaware Valley utilized the agreement's language when instituting a breach of contract action against appellant. Finally, Phico contended that the matters advanced in that action fell outside the coverage provided by its policy and were excluded by a provision barring contractually-based claims. Accordingly, Phico requested, among other things, a declaration that it had no obligation to defend or indemnify appellant against the claims asserted by Delaware Valley.

On May 6, 1993, after the effectuation of service, appellant filed an answer and new matter which challenged Phico's entitlement to relief and set forth a number of defenses. More specifically, appellant contended that the claims asserted in the underlying action had not been premised upon any breach of the agreement. Rather, it alleged that they were based upon allegations of gross negligence and willful miscon-

duct. Therefore, appellant averred that the terms of the policy obligated Phico to defend and indemnify it. Moreover, appellant alleged that Phico was estopped from denying coverage.

Phico later disputed the correctness of the estoppel claim in a reply to appellant's new matter. On March 15, 1994, relying upon the provisions of the liability policy, Phico moved for summary judgment. Several weeks later, the trial court entered the contested order. This timely appeal followed.

In *Acme Markets v. Federal Armored Express*, 437 Pa.Super. 41, 45, 648 A.2d 1218, 1220 (1994) (citations omitted), we noted that our scope of review from a grant of summary judgment is plenary and quoting *American States Insurance Co. v. Maryland Casualty Co.*, 427 Pa.Super. 170, 628 A.2d 880 (1993), stated:

> In reviewing an order granting a motion for summary judgment, we must view the record in the light most favorable to the non-moving party. All doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. Moreover, in summary judgment proceedings, it is not the court's function to determine the facts, but only to determine if an issue of material fact exists. Summary judgment should only be granted in those cases which are free and clear from doubt.

> Summary judgment is proper only where the pleadings, depositions, answers to interrogatories, admissions of record and affidavits on file support the trial court's conclusion that no genuine issue of material fact exists and [that] the moving party is entitled to judgment as a matter of law.

Moreover, we will not overturn a trial court's grant of summary judgment in the absence of either an error of law or a clear abuse of discretion. *Id.; see also Mellon v. Barre-National Drug Co.*, 431 Pa.Super. 175, 636 A.2d 187 (1993). Keeping these principles in mind, we consider the propriety of the contested summary judgment grant.

In the present case, appellant does not contend that an issue of fact existed such as to render the trial court's grant of summary judgment inappropriate. Rather, appellant's chal-

lenge to the court's decision is premised upon the claim that Phico was not entitled to judgment as a matter of law. In this regard, appellant asserts that since Phico possessed a potential duty of indemnification, Phico was obligated to defend it in the underlying action.

Preliminarily, we note:

> The duty to defend is a distinct obligation, separate and apart from the insurer's duty to provide coverage. *Erie Ins. Exchange v. Transamerica Ins. Co.*, 516 Pa. 574, 582, 533 A.2d 1363, 1368 (1987). Moreover, the insurer agrees to defend the insured against any suit arising under the policy "even if such suit is groundless, false, or fraudulent." *Gedeon v. State Farm Mutual Automobile Ins. Co.*, 410 Pa. 55, 56, 188 A.2d 320, 321 (1963). Since the insurer agrees to relieve the insured of the burden of defending even those suits which have no basis in fact, the obligation to defend arises whenever the complaint filed by the injured party may potentially come within the coverage of the policy. *Id.*; *see also Wilson v. Maryland Cas. Co.*, 377 Pa. 588, 105 A.2d 304 (1954); *Biborosch v. Transamerica Ins. Co.*, 412 Pa.Super. 505, 603 A.2d 1050 (1992); *Youngman v. CNA Ins. Co.*, 401 Pa.Super. 381, 585 A.2d 511 (1991). In order to determine whether a claim may potentially come within the coverage of the policy, we must first ascertain the scope of the insurance coverage and then analyze the allegations in the complaint. *Biborosch*, 412 Pa.Super. at 509, 603 A.2d at 1052 (citing *Cadwallader v. New Amsterdam Casualty Co.*, 396 Pa. 582, 152 A.2d 484 (1959)).

*Britamco Underwriters v. Grzeskiewicz*, 433 Pa.Super. 55, 59, 639 A.2d 1208, 1210 (1994). Accordingly, we turn to the relevant provisions of the comprehensive liability policy at issue.

Pursuant to a policy provision relating to director, officer, and trustee liability, Phico promised to "pay on behalf of the insured all sums which the insured shall be legally obligated to pay as damages because of wrongful act loss ... to which this insurance applies and for which claim is first made against the insured and reported to the Company during the policy peri-

od." Answer and new matter of appellant, Exhibit A, at 1 (emphasis omitted). The phrase "wrongful act loss" includes within its scope:

> any amount which the named insured or the Directors, Officers and Trustees shall be legally obligated to pay for a claim or claims made against the named insured or the Directors, Officers and Trustees, arising from any actual or alleged error or misstatement or misleading statement or act or omission or neglect or breach of duty by the Directors, Officers and Trustees in the discharge of their duties, individually or collectively, or any person acting on their behalf, or any matter claimed against them solely by reason of their being Directors, Officers and Trustees of the named insured.

*Id.* at 12 (emphasis omitted). In addition, we note that policy exclusion (m) precludes coverage for claims arising in connection with the breach of oral and written agreements unless they relate, among other things, to the employment of persons rendering professional health care services. *Id.* at 4.

Our review of the underlying complaint reveals that Delaware Valley alleged that it entered into an agreement with appellant for the management of a nursing home. Delaware Valley, which incorporated the terms of that agreement by reference, also asserted that appellant, through two of its employees, mismanaged the home in a myriad of ways. The various asserted acts of mismanagement related to nearly every aspect of appellant's administration from the quality of patient care and the excessive use of temporary nurses to the failure to ensure that the home complied with appropriate regulations. Delaware Valley contended that the challenged acts constituted either gross negligence or willful misconduct and collectively resulted in a breach of the agreement. Consequently, Delaware Valley requested both damages and the costs associated with the litigation.

Even if we assumed that the claims asserted by Delaware Valley may potentially fall within the scope of the coverage relating to director, officer, and trustee liability, such an assumption would not end our analysis. Instead, it merely

would require us to turn to the next logical issue, which involves the applicability of the policy exclusion relating to contractually-based claims. As our review of Delaware Valley's complaint demonstrates, the parties were involved in a contractual relationship for the management of a nursing home. Since the contractual relationship did not relate to the employment of a person for the provision of health care services, any determination as to the applicability of the policy exclusion involves an analysis of whether the claims asserted in the complaint sound in tort or in contract.

The determination as to whether causes of action sound in contract or in tort is difficult due to the somewhat confused state of our law. *See Grode v. Mutual Fire, Marine, and Inland Insurance Co.,* 154 Pa.Commw. 366, 623 A.2d 933 (1993) (noting the existence of confusion in this area). Indeed, we note that we have two distinct lines of case law relating to the issue. The first line arose with *Raab v. Keystone Insurance Co.,* 271 Pa.Super. 185, 412 A.2d 638 (1979). In *Raab,* we considered a claim that an insurance company negligently had failed to pay benefits according to an insurance contract. Quoting the trial court, we stated:

> Generally, when the breach of a contractual relationship is expressed in terms of tortious conduct, the cause of action is properly brought in assumpsit and not in trespass. *Damian v. Hernon,* 102 Pa.Super. 539, 157 A. 520 (1931). However, there are circumstances out of which a breach of contract may give rise to an actionable tort. *Closed Circuit Corp. of America v. Jerrold Electronics Corp.,* 426 F.Supp. 361 (E.D.Pa.1977). The test used to determine if there exists a cause of action in tort growing out of a breach of contract is whether there was an improper performance of a contractual obligation (misfeasance) rather than the mere failure to perform (nonfeasance). *Behrend v. Bell Telephone Company,* 53 D & C 2d 421 (1971), citing *Siegel v. Struble Bros.,* 150 Pa.Super. 343, 28 A.2d 352 (1942).

*Id.,* 271 Pa.Super. at 187–88, 412 A.2d at 639. Applying these principles, we concluded that the plaintiffs' claim was rooted in an assertion of nonfeasance and thus, raised a cause of action in assumpsit.

Later, in *Hirsch v. Mount Carmel District Industrial Fund,* 363 Pa.Super. 433, 526 A.2d 422 (1987), we considered the correctness of the manner in which a trial court applied the principles of *Raab.* However, in a footnote, we noted that *Raab* technically possessed no precedential authority since it represented the viewpoint of only one member of a three-judge panel.

We believe the simple rule expressed in *Raab* is inadequate to determine the true character of a claim. Although the rule certainly sets forth a bright and easily discernable line for considering the nature of a claim, it is not difficult to imagine many agreement-based complaints which may be characterized as sounding in tort when they more properly should be seen as contractual. Consequently, since *Raab* possesses no precedential authority, we do not follow it.[1] Therefore, we turn to the second line of cases, which we believe more appropriately addresses the characterization issue.[2]

In *Bash v. Bell Telephone Co.,* 411 Pa.Super. 347, 601 A.2d 825 (1992), we took a somewhat different approach to the

---

1. Moreover, even though we ostensibly applied *Raab* in *Fink v. Delaware Valley HMO,* 417 Pa.Super. 287, 612 A.2d 485 (1992), we do not believe that its misfeasance/nonfeasance rule possesses any vitality. In *Fink,* we considered whether breach of contract and general negligence claims were separate and distinct for appealability purposes. The breach of contract claim sought recovery for the cost of a surgical procedure as well as damages for bodily harm, wage loss, and other items resulting from the defendant's failure to pay for the procedure. In the negligence count, the plaintiff sought damages for pain and suffering, mental anguish and other injuries arising from, among other things, the negligent withholding of needed medical services and the negligent infliction of mental distress. Although we cited *Raab,* we examined the various allegations of negligence and noted that the plaintiff sought different measures of damages in the breach of contract and negligence counts. Thus, rather than engaging in a pure misfeasance/nonfeasance analysis, we examined the gist of the complaint.

2. We note that one case cited by appellant, *Barber v. Harleysville Mut. Ins. Co.,* 304 Pa.Super. 355, 450 A.2d 718 (1982), concluded that a counterclaim alleging a breach of an agreement via improper performance raised a suggestion that the question of negligence was at issue. However, that case, which neither cited any authority for that proposition nor discussed the matter with any detail, apparently did not involve a specific policy provision relating to contractually-based claims. Accordingly, we find it distinguishable.

issue. In that case, which arose in connection with the breach of an agreement relating to the publication of a telephone directory advertisement, we examined federal authority and indicated that to be construed as a tort action, the wrong ascribed to the defendant must be the gist of the action with the contract being collateral. In addition, we noted that a contract action may not be converted into a tort action simply by alleging that the conduct in question was done wantonly. Finally, we stated that the important difference between contract and tort actions is that the latter lie from the breach of duties imposed as a matter of social policy while the former lie for the breach of duties imposed by mutual consensus.

We note that *Bash* is consistent with the approach taken in *Toombs NJ Inc. v. Aetna Casualty & Surety Co.*, 404 Pa.Super. 471, 591 A.2d 304 (1991). In that case, we considered whether a complaint relating to the breach of an agreement to establish two restaurants alleged tortious claims that were covered under an insurance policy. We briefly examined the claims asserted in the complaint and found that the action both in its essence and upon its face was one for breach of contract. In addition, we noted:

> To allow indemnification under the facts presented here would have the effect of making the insurer a sort of silent business partner subject to great risk in the economic venture without any prospects of sharing in the economic benefit. The expansion of the scope of the insurer's liability would be enormous without corresponding compensation. There is simply no reason to expect that such a liability would be covered under a comprehensive liability policy which has, as its genesis, the purpose of protecting an individual or entity from liability for essentially accidental injury to another individual, or property damage to another's possessions, even if, perhaps, the coverage of the policy has been expanded to cover other non-bodily injuries that sound in tort.

*Id.*, 404 Pa.Super. at 476, 591 A.2d at 306.

Although appellant contends that the claims asserted in Delaware Valley's complaint were both contractual and

tortious in nature, its contention must fail. Our review of the complaint in question demonstrates that the action related only to appellant and Delaware Valley and arose out of the former's performance of a management agreement. Consequently, while Delaware Valley included allegations that appellant engaged in both gross negligence and willful misconduct, the agreement unquestionably was not collateral to any of its claims. Indeed, this conclusion is supported by the fact that Delaware Valley averred that the actions which it relies upon to demonstrate tortious conduct collectively resulted in the breach of the agreement. Finally, we note that to make Phico responsible under the insurance policy would effectively change its status from a mere insurer to a party to the transaction.

Having determined that the policy exclusion regarding contractually-based claims precludes coverage under the insurance policy, we must examine appellant's assertion that Phico was estopped from relying upon that provision. In support of its claim, appellant alleges that while Phico provided counsel to defend the claim, it improperly neglected to reserve its right to deny coverage.

Initially, we note:

[a] liability insurer will not be estopped to set up the defense that the insured's loss was not covered by the insurance policy, notwithstanding the insurer's participation in the defense of an action against the insured, if the insurer gives timely notice to the insured that it has not waived the benefit of its defense under the policy. However, a reservation of rights in this respect, to be effective, must be communicated to the insured. It must fairly inform the insured of the insurer's position and must be timely, although delay in giving notice will be excused where it is traceable to the insurer's lack of actual or constructive knowledge of the available defense.

*Brugnoli v. United Nat'l Ins. Co.*, 284 Pa.Super. 511, 518, 426 A.2d 164, 167 (1981), *modified*, 284 Pa.Super. 520, 434 A.2d 105 (1981), quoting 14 G. Couch, *Cyclopedia of Insurance Law* § 51:83 (2d ed. 1965) (footnotes omitted).

In the present case, appellant's specific claim is limited to the contractually-based policy exclusion. *See* Appellant's brief at 19. Consequently, we must determine whether Phico effectively reserved its rights with respect to that exclusion. With this in mind, we turn to the record.

Our review of the record reveals that on July 10, 1989, R. Peter Ericson, a representative of Phico, wrote to appellant's risk manager, Patricia Roth. In that letter, Mr. Ericson acknowledged the receipt of materials from Ms. Roth and informed her that it would be premature to determine whether there would be coverage for any claim by Delaware Valley. However, Mr. Ericson indicated that if the claim merely related to a breach of contract, it would not be covered. In addition, he mentioned that if the claim involved negligence, there may be coverage. Finally, Mr. Ericson agreed to place the materials received from appellant in an incident report.

Eleven days later, after Ms. Roth requested Mr. Ericson to re-examine his position, Mr. Ericson again wrote to her. In his letter, he agreed to establish a file for the claim and assign it to counsel for investigation. He then stated:

> As I had indicated in my earlier telephone conversation with you and my letter of July 10, 1989, I believe that there would most probably not be coverage under the hospital's policy with PHICO, especially if this is just a straight claim for breach of contract. By setting up a claim file and assigning this matter to counsel for investigation, I am not waiving my right under the hospital policy to reserve rights based on any exclusion of the hospital's policy with PHICO nor am I waiving rights on behalf of PHICO to decline coverage, should that be justified.
>
> I have spoken with Brian M. Peters, Esquire, Post & Schell in Philadelphia and asked him to become involved in an investigation of this matter. Mr. Peters will be involved in investigating the substantive issues of this case and will not be involved in the issues concerning coverage, should they later arise.

Appellant's response to Phico's motion for summary judgment, Exhibit E.

On April 17, 1991, Delaware Valley filed its complaint against appellant. Several weeks later, following the effectuation of service, Stephanie E. Chertok informed Ms. Roth in a letter that she had received documentation regarding the suit and indicated that the Phico policy did not cover breach of contract claims. She then quoted the specific policy exclusion relied upon in support of her conclusion.

 Our review of the record reveals that Phico informed appellant from the outset that the policy at issue would not cover breach of contract claims. In his second letter, Mr. Ericson, while agreeing to assign counsel to investigate the matter, again indicated that appellant would not be covered if the claims asserted by Delaware Valley were for breach of contract. In addition, he clearly stated that Phico would not be waiving coverage or exclusion issues. As this letter was written long before suit in the action was filed, Phico unquestionably informed appellant of its position in a timely fashion. Thus, since we find that Phico properly reserved its right to raise its policy exclusion relating to contractually-based claims, appellant's estoppel claim must fail.

Order affirmed.