# The Brickman Group Ltd. v.
# CGU Insurance Company

*John N. Ellison,* for plaintiff.
*Joseph P. Dougher,* for defendant.

HERRON, *J.,* August 3, 2001—Presently before this court is the motion for leave to amend the complaint of plaintiff, The Brickman Group Ltd., and defendant CGU Insurance Company's opposition thereto. In its motion, Brickman seeks to reassert claims for breach of fiduciary duty and bad faith pursuant to Pa.C.S. §8371, to add a new claim for fraud, and to amplify and update its breach of contract allegations and the facts underlying its claim(s). CGU does not oppose the amendment to update the breach of contract allegations, but does oppose any amendment to reassert claims for breach of fiduciary duty, bad faith or set forth a new claim for fraud, on the grounds that any amendment is against a positive rule of law.

This court agrees that no amendment should be permitted to allow claims for breach of fiduciary duty, bad faith or fraud since these claims cannot survive demurrer on the facts alleged. However, amendment is permitted to update and amplify the breach of contract allegations. Therefore, for the reasons set forth in this opinion, the motion is granted in part and denied in part.

## PROCEDURAL BACKGROUND

On July 10, 2000, Brickman filed its original complaint against CGU. CGU filed its first set of preliminary objections on August 2, 2000. Then, on August 23, 2000, Brickman filed its first amended complaint, set-

ting forth counts for breach of contract (Counts I [specific performance] and II [monetary damages]), breach of fiduciary duty (Count III) and bad faith insurance practices in violation of 42 Pa.C.S. §8371 (Count IV). CGU filed preliminary objections to this complaint on September 12, 2000, asserting a demurrer to each count and demurring to the prayer for attorney fees. On January 8, 2001, this court issued an order and contemporaneous opinion sustaining the objections to Counts III and IV, sustaining the demand for attorney fees, and overruling the objections to Counts I and II.[1]

Brickman filed its motion to amend its complaint on May 11, 2001, less than 30 days from the end of the third extension of the discovery period.[2] Brickman maintains that it brings this motion based, in part, on newly-discovered facts. See motion, ¶¶7-10. CGU filed its response on June 11, 2001. Brickman filed a reply on June 19, 2001 and a supplemental reply on July 19, 2001.

---

1. See *The Brickman Group Ltd. v. CGU Insurance Co.,* July 2000, no. 909 (C.P. Phila. January 8, 2001) (Herron, J.), available at http:\\courts.phila.gov\cptcvcomp.htm.

2. The discovery period was scheduled to end on June 6, 2001 other than the extension of time to take certain additional depositions. See order of May 16, 2001. The deadline for filing pretrial motions was set for July 2, 2001. The trial in this case is scheduled for December 3, 2001. Both parties requested a scheduling conference to address the effect of plaintiff's present motion on the case. Since this court is denying the motion insofar as it seeks to add new causes of action and since plaintiff's counsel represented to this court that it will promptly produce all documents related to Brickman's securing a replacement insurance program, this court does not believe that an extension of the discovery deadline is presently necessary.

## DISCUSSION

Rule 1033 of the Pennsylvania Rules of Civil Procedure permits a party to amend his complaint either by filed consent of the adverse party or by leave of court. The rule also provides that "[t]he amended pleading may aver transactions or occurrences which have happened before or after the filing of the original pleading, even though they give rise to a new cause of action or defense" and also allows amendment "to conform the pleading to the evidence offered or admitted." Pa.R.C.P. 1033. The trial court has broad discretion in determining whether to allow amendment. *Capobianchi v. BIC Corp.,* 446 Pa. Super. 130, 134, 666 A.2d 344, 346 (1995). "Amendments are to be liberally permitted except where surprise or prejudice to the other party will result or where the amendment is against a positive rule of law." *Burger v. Borough of Ingram,* 697 A.2d 1037, 1041 (Pa. Commw. 1997). See also, *Roach v. Port Authority of Allegheny County,* 380 Pa. Super. 28, 30, 550 A.2d 1346, 1347 (1988) ("the right to amend the pleadings should not be withheld where some reasonable possibility exists that the amendment can be accomplished successfully").

Notwithstanding this liberal amendment policy, "a court is not required to allow amendment of a pleading if a party will be unable to state a claim on which relief could be granted." *Werner v. Zazyczny,* 545 Pa. 570, 584, 681 A.2d 1331, 1338 (1996). "Leave to amend will be withheld where the initial pleadings reveal that the prima facie elements of the claim cannot be established and that the complaint's defects are so substantial that amendment is not likely to cure them." *Roach,* supra at 30, 550

A.2d at 1348. See also, *Behrend v. Yellow Cab Company,* 441 Pa. 105, 110, 271 A.2d 241, 243 (1970) ("liberality of pleading does not encompass a duty in the courts to allow successive amendments when the initial pleading indicates that the claim asserted cannot be established"). Further, amendment to add a new cause of action is not permitted after the statute of limitations has run, unless the proposed amendment does not change the cause of action but merely amplifies that which has already been averred. See *e.g., Shenandoah Borough v. Philadelphia,* 367 Pa. 180, 189-92, 39 A.2d 433, 437 (1951) (denying leave to add a negligence cause of action after expiration of the statute of limitations); *Burger,* 697 A.2d at 1041-42 (denying leave to amend to bring claims for civil rights violations under 42 U.S.C. §1983); *New York State Electric & Gas Corp. v. Westinghouse Electric Corp.,* 387 Pa. Super. 537, 555, 564 A.2d 919, 928 (1989) (denying leave to add a fraud cause of action and new facts to support it after the statute of limitations had expired).

Applying this standard to the present case, this court finds that Brickman's proposed amendments do not cure the defects as to the claims for breach of fiduciary duty and bad faith, and the new fraud claim is barred by the "gist of the action" doctrine.

### I. *CGU's Power To Set Reserves and Its Reserving Decisions Does Not Implicate a Fiduciary Duty to Brickman, Its Insured*

In its previous opinion, this court sustained the demurrer to Brickman's claim for breach of fiduciary duty

in Count III of the first amended complaint, on the grounds that the gravamen of Brickman's claim was for CGU's failure to abide by the five-year and six-year contract(s)[3] and renew the insurance policies under the same terms and conditions since this claim does not involve the handling of benefits, settling or defending insurance claims or denial of coverage. *The Brickman Group Ltd. v. CGU Insurance Co.,* July 2000, no. 909, slip op. at 14-16 (C.P. Phila. Jan. 8, 2001). This court previously stated that "Pennsylvania law does not recognize a cause of action for breach of fiduciary duty for failure to renew an insurance policy." *Id.* at 12-13.

In its proposed second amended complaint, Brickman seeks to resurrect its fiduciary duty claim by alleging, inter alia, that:

"(60) CGU was entrusted with the power to set reserves for claims. Reserves are estimations of the money that will eventually be paid for the costs associated with a claim.

"(61) Such reserves were to be used to establish the 'incurred loss' half of the equation required for the 5 percent rate reduction aspect of CGU's insurance program guarantee.

---

3. The five-year and six-year contract(s) are purportedly separate from the insurance policies themselves, but oblige CGU to sell Brickman insurance at the same rates over the term of the contract. In its proposed second amended complaint, Brickman refers to the five-year and six-year contracts as "CGU's insurance program guarantee." Second am. compl., ¶¶9, 11-17, 21-23.

"(62) The power to set reserves is one regarding the defense, handling or settlement of claims, in which a fiduciary duty arises.

"(63) Upon information and belief, CGU's reserving decisions, including both the setting and maintaining of reserves, were not solely based upon the likely estimations of the money that would eventually be paid for the costs associated with Brickman's claims, but were inflated or not appropriately adjusted in an effort to make Brickman's loss experience appear worse than it is.

"(64) CGU violated the trust and confidence placed in it as a fiduciary by exaggerating reserves and making Brickman's loss experience appear worse than it truly is.

"(65) In addition, CGU promised to provide loss control services to avoid and/or control the costs of claims and charged Brickman for those services.

"(66) CGU failed to provide the loss control services, likely caused increased losses, and then attempted, in breach of its fiduciary duties, to use allegedly poor loss experience as an excuse to renege on its insurance program guarantee.

"(67) CGU violated the trust and confidence placed in it as a fiduciary by misrepresenting to Brickman its knowledge about the existence and terms of the five-year insurance program guarantee." Second am. compl., ¶¶60-67.

Notwithstanding these allegations, this court finds that Brickman has not stated anything new that would give rise to a claim for breach of fiduciary duty. The allegations do not involve the CGU's defense, handling or settlement of claim against Brickman or on Brickman's

behalf. CGU offers the plausible explanation that "[s]etting reserves is an internal accounting mechanism for CGU and represents their estimates of the losses they are called on to pay," but that reserves do not affect the value of the claim nor "determine the extent of a carrier's liability to pay losses." Def. mem. of law at 7. Brickman argues that the question of whether setting reserves involves the defense, handling or settlement of claims is a factual issue. Pl. reply br. at 3-4. However, this court disagrees. Again, Brickman does not allege that any specific claims were actually mishandled by CGU. Rather, at best, Brickman's allegations merely amplify the breach of contract claim for CGU's alleged failure to renew or sell Brickman insurance policies at guaranteed rates.

Therefore, Brickman's motion as to its fiduciary duty claim is denied.

## II. *Brickman Again Fails To State a Claim for Statutory Bad Faith Since the Gravamen of Brickman's Claim Relates to a Failure To Renew an Insurance Policy*

This court previously stated that "a bad faith claim under [42 Pa.C.S.] §8371 does not involve a failure to renew an insurance policy, unless such failure involves the denial of benefits or the handling of a claim, which is a situation not implicated on the present facts." *Brickman,* slip op. at 19. Rather, this court found that Brickman's claim was better decided as part of its breach of contract claim. *Id.* at 21.

In its proposed second amended complaint, Brickman attempts to revamp its statutory bad faith claim where it

alleges that CGU relied on the provisions in the liability insurance policies which require CGU to provide specified notice prior to non-renewal, cancellation or premium increases, in order to justify its decision to not renew the policies despite the "insurance program guarantee" and in order to avoid paying claims under the guaranteed rates. Second am. compl., ¶¶73-75. Brickman also suggests that by inserting a deductible of $250,000 into the general liability insurance policy for the 2001-2002 policy period, CGU is refusing to pay, even before a claim is made, without a reasonable basis and in knowing anticipatory breach of the terms of the insurance policies which CGU is purportedly required to sell to Brickman under the insurance program guarantee. *Id.* at ¶¶76-77. This court disagrees with Brickman's argument that the allegations in the proposed second amended complaint specifically link CGU's "bad faith" conduct to the insurance policies, themselves, and state a statutory bad faith claim for anticipatory breach of these policies. Notwithstanding any of Brickman's allegations, this court again finds that the gravamen of Brickman's claim rests in CGU's failure to renew Brickman's policies at the same terms and rates despite the insurance program guarantee. See *id.* at ¶¶71-87. This court also finds that Brickman's proposed amendment does not cure the defects of the first amended complaint.

Therefore, Brickman's motion as to its statutory bad faith claim is denied.

### III. *Brickman's Proposed Claim for Fraud Is Barred by the "Gist of the Action" Doctrine*

Brickman also moves to amend its first amended complaint to add a cause of action for fraud. CGU opposes this addition on the grounds that it is futile, prejudicial to CGU and in violation of the positive rules of law because (1) the two-year statute of limitations has expired; (2) Brickman's proposed fraud claim violates Pennsylvania's "gist of the action" doctrine; and (3) the allegations are made in bad faith.

This court agrees that the "gist of the action" doctrine does bar Brickman's proposed fraud claim, thereby rendering this part of its second amended complaint futile.[4]

---

4. This court need not address the other two grounds for denying Brickman leave to amend. However, it is true that an action for fraud or deceit must be commenced within two years. 42 Pa.C.S. §5524(7). CGU may be estopped from invoking the statute of limitations defense if it committed some affirmative independent act of concealment upon which Brickman justifiably relied. *Kingston Coal Company v. Felton Mining Company Inc.,* 456 Pa. Super. 270, 283-84, 690 A.2d 284, 290-91 (1997). However, mere mistake, misunderstanding or lack of knowledge is insufficient to toll the statute of limitations and Brickman bears the burden of proving such fraud or concealment, by evidence which is clear, precise and convincing. *Id.*

Here, CGU argues that Brickman should have known of any alleged fraud as soon as it received the insurance policies in 1997, which contained non-renewal provisions and renewal premium quotation provisions. Def. mem. of law, at 11-12. See also, def. exhibits H, I, J and K. Brickman asserts that its cause of action for fraud did not begin to run until the year 2000 when CGU asserted the notice provisions as a basis for violating the insurance program guarantee. Pl. reply br. at 10-11.

On the face of the complaint, CGU performed for four years, selling Brickman policies and paying claims. Second am. compl., ¶¶17,

As to its proposed fraud claim, Brickman alleges, inter alia, that:

"(90) The only condition CGU placed on its agreement to the insurance program guarantee in 1997 was that the workers' compensation coverage had to be included in Brickman's insurance program. The workers' compensation coverage was included, pursuant to CGU's condition.

"(91) To the extent that CGU had any additional conditions on the insurance program guarantee or to the extent CGU meant to exclude the property insurance from the insurance program guarantee, those conditions were concealed from Brickman.

"(92) In 1998, CGU informed Brickman, through Gallagher, that it agreed to roll forward its insurance program guarantee, making the 1998 rates the new guaranteed rates and extending the term of the guarantee until July 1, 2003.

"(93) CGU's statements were misrepresentations, in that CGU never intended to comply with its insurance

---

24, 28, 37. The relevant notice provisions in the insurance policies obligate CGU to provide written notice by certified mail of its intent not to renew 120 days prior to the policies' respective expiration dates. Def. exhibits H, I, J and K. The renewal premium quotations require 90 days prior notice. *Id.* Under these facts, it does not seem that Brickman has offered sufficient evidence that CGU actively concealed its intent not to renew the policies at the guaranteed rates over the five- and six-year periods, or that CGU should be estopped from asserting this defense. Therefore, the statute of limitations may, in fact, act as a bar to Brickman's asserting its fraud claim. Nonetheless, the court is denying the motion to amend on other grounds.

program guarantee if the Brickman account became, in CGU's opinion, unprofitable.

"(94) To the extent that CGU felt that it need not comply with its insurance program guarantee unless it was attached as an endorsement to the insurance policies, CGU fraudulently concealed that fact and failed intentionally, recklessly or negligently to attach the insurance program guarantee as an endorsement.

"(95) CGU's insurance program guarantee was an artifice used to deceive Brickman to its disadvantage by making Brickman believe that it could purchase from CGU the same insurance at the same rates for five years, and then, following the extension of the insurance program guarantee in 1998, for an additional year, through 2003.

"(96) CGU knew or recklessly disregarded the fact that its insurance program guarantee was a fraud and a misrepresentation.

"(97) CGU made its insurance program guarantee in an effort to induce reliance by Brickman thereon and to entice Brickman to switch insurance companies to CGU (in 1997) and not away from CGU (in 1998), during a highly competitive insurance market.

"(98) Brickman justifiably relied on CGU's misrepresentations in deciding to purchase insurance from CGU in 1997 and 1998.

"(99) CGU's misrepresentations were material to the transactions, in that CGU's five-year insurance program guarantee was a condition of Brickman's purchase of insurance from CGU." Second am. compl. at ¶¶90-99.

The "gist of the action" doctrine bars claims for allegedly tortious conduct where the gist of the conduct sounds in contract rather than tort. *Redevelopment Authority of Cambria v. International Insurance Co.,* 454 Pa. Super. 374, 391-92, 685 A.2d 581, 590 (1996); *Phico Insurance Co. v. Presbyterian Medical Services Corp.,* 444 Pa. Super. 221, 228, 663 A.2d 753, 757 (1995). As noted in *Phico,* the doctrine holds that:

"[T]o be construed as a tort action, the wrong ascribed to the defendant must be the gist of the action with the contract being collateral. In addition, . . . a contract action may not be converted into a tort action simply by alleging that the conduct in question was done wantonly. Finally, . . . the important difference between contract and tort actions is that the latter lie from the breach of duties imposed as a matter of social policy while the former lie for the breach of duties imposed by mutual consensus." *Id.* at 229, 663 A.2d at 757.

Courts have generally invoked the "gist of the action" doctrine to bar a tort claim where the defendant negligently or intentionally breached a contract. See *Redevelopment Authority,* 454 Pa. Super. at 391, 685 A.2d at 590 (holding that doctrine barred claim of negligent performance of contractual duties); *Phico,* 444 Pa. Super. at 228, 663 A.2d at 757 (same); *Grode v. Mutual Fire, Marine and Inland Ins. Co.,* 154 Pa. Commw. 366, 373, 623 A.2d 933, 937 (1993) (same); *Sunquest Info. Sys. v. Dean Witter Reynolds Inc.,* 40 F. Supp.2d 644, 651 (W.D. Pa. 1999) (holding that "gist of the action" doctrine barred claim of fraudulent inducement to form a contract); *Factory Mkt. Inc. v. Schuller Int'l Inc.,* 987 F. Supp. 387, 394-

95 (E.D. Pa. 1998) (holding that doctrine barred fraud claim based on a failure to honor guarantees contained in a contract); *Peoples Mortg. Co.,* 856 F. Supp. at 856 (holding that "gist of the action" doctrine barred conversion claim based on false billing under a contract). On the other hand, courts have generally not applied the doctrine where the defendant not only breached the contract, but also made misrepresentations about the breach in order to deceive the unsuspecting plaintiff into continuing the contractual relationship or to not assert its contractual rights against the defendant. *Greater Philadelphia Health Servs. II Corp. v. Complete Care Servs. L.P.,* June 2000, no. 2387, slip op. at 4 (C.P. Phila. November 20, 2000) (Herron, J.) (citing *Northeastern Power Co. v. Backe-Durr Inc.,* 1999 WL 674332 at \*12 (E.D. Pa.); *Polymer Dynamics Inc. v. Bayer,* 2000 WL 1146622, at \*6-7 (E.D. Pa.); *American Guarantee & Liability Ins. Co. v. Fojiani,* 90 F. Supp.2d 615, 623 (E.D. Pa. 2000); *Fox's Foods Inc. v. Kmart Corp.,* 870 F. Supp. 599, 609 (M.D. Pa. 1994)).

All of Brickman's allegations in its proposed count for fraud are dependent upon its breach of contract claim for CGU's alleged failure to perform under the insurance program guarantee. Brickman is seeking to enforce its purported right to be sold insurance policies by CGU at the same guaranteed rates over a five- and six-year period, which is a right that derives directly from the alleged insurance program guarantee. At best, Brickman's allegations set forth a fraudulent inducement claim to enter into the insurance program guarantee, but such a claim is barred by the "gist of the action" doctrine.

Therefore, Brickman's motion as to its fraud claim is denied.

## IV. *Brickman's Motion To Amend To Amplify Its Factual Allegations to Its Breach of Contract Claim Is Granted*

Brickman also seeks to amend its factual averments in order to plead facts that have occurred since the first amended complaint was filed on August 23, 2000. Specifically, Brickman alleges that "[o]n or about February 27, 2001, CGU gave Brickman notice that it would non-renew the automobile insurance for the 2001-2002 policy year, claiming that the auto line of insurance had an incurred loss ratio exceeding 150 percent for the period July 1, 1997 through January 30, 2001." Second am. compl., ¶38. Brickman also alleges that CGU, on March 30, 2001, provided an "insurance proposal" which ignores the existence of the purported insurance guarantee and offers Brickman insurance with different terms and conditions than the existing insurance policies in violation of the insurance program guarantee. *Id.* at ¶42. Brickman also seeks to show that CGU, through its underwriter, admitted to the existence of the five-year insurance program. *Id.* at ¶¶18-20.

CGU does not oppose the proposed factual amendments to its breach of contract claims, but does oppose any revival of Brickman's prayer for attorney fees as to damages. Def. mem. of law at 16. However, CGU does request additional time for discovery to address those amendments which this court may permit. *Id.* at 17.

This court previously struck the demand for attorney fees, finding that the only claims that remained were

breach of contract claims which do not allow for attorney fees. *Brickman,* slip op. at 21-22. Likewise, here, the court is denying the motion to amend to add any new claims or revive the previously-dismissed ones. Therefore, the court need not address this issue again. As to additional discovery, this court finds it unnecessary since Brickman attached various exhibits to its proposed second amended complaint in order to bolster its factual averments and Brickman's counsel represented to the court that it would "promptly produce all documents" related to its securing a replacement insurance program in order to assess Brickman's alleged damages.[5]

## CONCLUSION

For the reasons set forth above, the court is denying the motion to amend insofar as it seeks to add claims for breach of fiduciary duty, bad faith pursuant to 42 Pa.C.S. §8371, and fraud, or to replead a prayer for attorney fees, but is granting the motion insofar as it seeks to amplify factual averments to Brickman's breach of contract claims.

## ORDER

And now, August 3, 2001, upon consideration of plaintiff's motion for leave to amend its complaint, defendant's opposition thereto, all other matters of record, and in accordance with the opinion being filed contemporaneously with this order, it is hereby ordered that:

---

5. See letter of plaintiff's counsel dated June 18, 2001.

(1) Plaintiff's motion for leave to amend to replead counts for breach of fiduciary duty and bad faith pursuant to 42 Pa.C.S. §8371, and to add a count for fraud is denied without prejudice;

(2) Plaintiff's motion for leave to amend to replead a prayer for attorney fees is denied;

(3) Plaintiff's motion for leave to amend to amplify its factual averments to its breach of contract claim(s) (Counts I & II) is granted; and

(4) Defendant's request for an extended discovery period is denied without prejudice.