**Thierry v. Matson**

46

Pro se plaintiff.
Pro se defendant.

BARATTA, *J.*, February 11, 2014—

## ORDER OF COURT

And now, this day of February, 2014, upon consideration of the defendant, Larry E. Matson Jr., d/b/a Matson Contracting, d/b/a Matson's Contracting's, preliminary objections to the amended complaint and the plaintiff, Christine M. Thierry's, response thereto, it is hereby ordered that said preliminary objections are disposed of as follows:

(1) The preliminary objection in the nature of a demurrer to Count I (Fraud), Count IV (Negligence Per Se), Count VII (Damage to Real Property) and Count VIII (Trespass) is sustained. Those counts are dismissed;

(2) The preliminary objection in the nature of a motion to strike plaintiff's request for punitive damages is granted;

(3) The preliminary objection in the nature of a motion to strike plaintiff's request for treble damages under the UTPCPL is denied; and

(4) The preliminary objection in the nature of a motion to strike paragraphs 23 and 25 is granted.

## STATEMENT OF REASONS

### Facts and Procedural History

On October 18, 2013, the plaintiff, Christine M. Thierry, appealed from Magisterial District Judge Roy A. Manwaring II's judgment for the defendant, Larry E. Matson Jr., d/b/a Matson Contracting, d/b/a Matson's Contracting, in the total amount of $3,051.50. The plaintiff filed her complaint on October 18, 2013, raising

the following causes of action: (1) Breach of Contract;[1] (4) Breach of Warranty; (5) Fraud; (6) Damage to Real Property; (7) Disgorgement of Profits; (8) Unjust Enrichment; (9) Violation of Home Improvement Consumer Protection; and (10) Recklessness.

On November 12, 2013, the defendant filed preliminary objections to the plaintiff's complaint and a supporting brief. In response, the plaintiff filed her amended complaint on November 19, 2013. She avers the following facts in her amended complaint:

The plaintiff posted an advertisement on Craigslist. com, seeking a "Skilled Meticulous Contractor" for her "historic home" built in 1869. The defendant contacted the plaintiff via telephone. On March 15, 2013, the parties signed a contract for restoration of the multi-unit historical residence located at 258 E. Market Street, Bethlehem, Pennsylvania. According to the terms of contract, the amount due was $16,383.00, and an additional $3,804.63 was due according to written change orders. On July 5, 2013, the defendant terminated the contract in writing via email and retained the monies previously paid under the contract.

This dispute arises out of the defendant's alleged defective performance under the contract and retention of monies paid under the contract. The plaintiff alleges that the "defendant received an advance payment for performing home improvement services or providing home improvement materials and failed to perform or provides such services or materials when specified in the contract."

---

1. We assume that the plaintiff intended to include two additional unnumbered causes of action in her complaint.

Amended complaint ¶ 18. In addition to his defective performance, the defendant allegedly lacked the licenses necessary for completion of the project, failed to provide the plaintiff with acceptable contact information, falsely represented completion of certain work, fraudulently misrepresented and billed for incomplete work, and took inadequate safety precautions. Additionally, the defendant's defective work allegedly caused damage to the plaintiff's real property.

The plaintiff raises the following causes of action in her amended complaint: (1) Fraud; (2) Home Improvement Fraud (HICPA — 73 P.S. § 517.1); (3) Violation of the UTPCPL; (4) Negligence Per Se; (5) Breach of Warranty; (6) Damage to Real Property; and (7) Trespass. The plaintiff attached the following exhibits to her amended complaint: her Craigslist posting (Exhibit "A"); the signed contract (Exhibit "B"); Home Improvement Consumer Information (Exhibit "C"); and the bill for Paul Wright Roofing from July 17, 2013 (Exhibit "D").

On December 4, 2013, the defendant filed his preliminary objections to the amended complaint. The defendant raises the following objections: (1) Preliminary objection in the Nature of a Demurrer to Count I of the plaintiff's complaint and preliminary objection pursuant to Pa.R.C.P. 1028(a)(3) for Insufficient Specificity in Pleading Fraud; (2) Preliminary objection in the Nature of a Demurrer to Count VIII (Trespass) of plaintiff's complaint; (3) Preliminary objection in the nature of a demurrer to Counts I (Fraud), IV (Negligence Per Se), VII (Damage to Real Property) and VIII (Trespass); (4) Preliminary objection in the nature of a motion to strike plaintiff's requests for and award of punitive damages; (5)

Preliminary objection in the nature of a motion to strike plaintiff's request for treble damages under the UTPCPL; and (6) Preliminary objection in the nature of a motion to strike paragraphs 23 and 25 of plaintiff's complaint. On December 4, 2013, the defendant filed his memorandum of law in support of the preliminary objections.

On December 19, 2013, the plaintiff filed her response to the preliminary objections. On the same day, she filed a memorandum of law in support of the plaintiff's opposition to the defendant's preliminary objections.

This matter was placed on the January 28, 2013, argument list and submitted on brief.

## Legal Standard

In ruling on preliminary objections in the nature of a demurrer, the trial court may consider no testimony or evidence outside of the complaint. *Mellon Bank, N.A. v. Fabinyi*, 650 A.2d 895, 899 (Pa. Super. 1994) (citation omitted). In ruling upon a demurrer, we must accept as true all well-pleaded allegations and material facts averred in the complaint as well as all reasonable inferences deducible therefrom. *Wurth v. City of Phila.*, 584 A.2d 403, 407 (Pa. Commw. Ct. 1990) (citation omitted). However, when ruling on preliminary objections, although a court must accept as true all clearly-pled facts, there is no such requirement as to a pleader's legal conclusions or mere averments of law. *Santiago v. Pa. Nat'l Mut. Cas. Ins. Co.*, 613 A.2d 1235, 1238-39 (Pa. Super. 1992) (citations omitted).

In the face of a demurrer, a complaint should only be dismissed in cases that are free and clear from doubt. *Id.* at

1238. If any theory of law will support a claim, preliminary objections should not be sustained as any doubt should be resolved against the objecting party. *Foster v. Peat Marwick Main & Co.*, 587 A.2d 382, 384 (Pa. Commw. Ct. 1991); *Ambrose v. Cross Creek Condos.*, 602 A.2d 864, 869 (Pa. Super. 1992). In order to grant a demurrer, it must be certain from the face of the complaint that the claims will not support recovery under any legal theory. *Mellon Bank*, 650 A.2d at 899; *Eckell v. Wilson*, 597 A.2d 696, 698 (Pa. Super. 1991), *appeal denied*, 607 A.2d 253 (Pa. 1992) (citations omitted).

## Discussion

The defendant raises three preliminary objections with regard to the plaintiff's tort claims. As we sustain the defendant's third preliminary objection in the nature of a demurrer, we decline to rule on the defendant's first two preliminary objections in the nature of a demurrer, as we find that the plaintiff's tort claims are barred by the "gist of the action" doctrine.

I. Preliminary Objections in the Nature of a Demurrer to the Plaintiff's Tort Claims

The defendant argues in his preliminary objections that the plaintiff's tort claims are barred under the "gist of the action" doctrine in Pennsylvania, because the gist of the action lies in contract and not tort. *See* preliminary objections ¶¶ 37-45. Specifically, the defendant has challenged Count I (Fraud), Count IV (Negligence Per Se), Count VII (Damage to Real Property) and Count VIII (Trespass). In response, the plaintiff argues that she has properly pled those causes of action.

The "gist of the action" doctrine is applied in Pennsylvania "to preclude plaintiffs from re-casting ordinary breach of contract claims into tort claims."[2] *eToll, Inc. v. Elias/Savion Adver., Inc.*, 811 A.2d 10, 14 (Pa. Super. 2002). In marking the distinction between contract and tort actions, "[t]he most important difference...is that the latter lie from breach of duties imposed as a matter of social policy while the former lie for the breach of duties imposed by mutual consensus." *Id.* Therefore, "a claim should be limited to a contract claim when the parties' obligations are defined by the terms of the contracts, and not by the larger social policies embodied by the law of torts." *Reed v. Dupuis*, 920 A.2d 861, 864 (Pa. Super. 2007).

In determining whether the gist of the action doctrine applies, our Superior Court has examined whether the claim of fraud arises directly out of the contract dispute. *Id.* There is no "categorical exception for fraud," so "it is possible that a breach of contract also gives rise to an actionable tort." *eToll*, 811 A.2d at 14, 19. In making the determination, a court should focus on "whether the fraud concerned the performance of contractual duties." *Id.* at 19. Under Pennsylvania case law, the gist of the action doctrine bars tort claims:

> (1) arising solely from a contract between the parties; (2) where the duties allegedly breached were created and grounded in the contract itself; (3) where the liability stems from a contract; or (4) where the tort claim essentially duplicates a breach of contract claim

---

2. While our Supreme Court has not yet expressly adopted the "gist of the action" doctrine, it has been recognized by our Superior Court. *See, e.g., Bash v. Bell Tel. Co.*, 601 A.2d 825 (Pa. Super. 1992).

or the success of which is wholly dependent on the terms of the contract.

*Id.* (internal citations omitted).

In her brief, the plaintiff argues that the test used to determine if there exists a cause of action in tort arising out a breach of contract is "whether there was an improper performance of a contractual obligation (misfeasance) rather than a mere failure to perform (nonfeasance)." *Raab v. Keystone Ins. Co.*, 412 A.2d 638, 639 (Pa. Super. 1979). Our Superior Court has since rejected the *Raab* test, finding instead that in order for a claim "to be construed as a tort action, the wrong ascribed to the defendant must be the gist of the action with the contract being collateral." *Redev. Auth. Of Cambria v. Intern Ins.*, 685 A.2d 581, 590 (Pa. Super. 1996) (citing *Phico Ins. Co. v. Presbyterian Med. Servs. Corp.*, 663 A.2d 753, 757 (Pa. Super. 1995)). Further, "a contract action may not be converted into a tort action simply by alleging that the conduct was done wantonly." *Phico*, 663 A.2d at 757.

In *eToll, supra,* our Superior Court examined whether the gist of the action doctrine should be applied to dismiss the plaintiff's fraud claim. *eToll,* 811 A.2d at 14-21. The plaintiff in that case contended that the defendants perpetuated a number of fraudulent schemes in the course of the parties' contractual relationship, including that they: (1) deceived the plaintiff regarding the price of certain goods while charging at an inflated price; (2) deliberately submitted bills containing fictitious charges and unauthorized markups; (3) told the plaintiff that they had performed certain services under the contract when they had not so performed; and (4) concealed these

schemes in order to perpetuate overbilling and fraud. *Id.* at 20.

The court found that the alleged acts of fraud "arose in the course of the parties' contractual relationship." *Id.* Further, the court found that the duties regarding billing and performance arose from and were grounded in the parties' contract, rather than in social policy. *Id.* The court also determined that the damages for fraud would essentially duplicate those in a breach of contract claim. *Id.* at 21. The eToll court found that "the fraud claims are inextricably intertwined with the contract claims" and that the gist of the action lay in contract; therefore, the court did not reverse the trial court's dismissal of the fraud claim. *Id.*

In *J.J. DeLuca Co., Inc. v. Toll Naval Assoc.*, 56 A.3d 402, 415 (Pa. Super. 2012), our Superior Court examined a circumstance in which it found that the gist of the action doctrine did not preclude a party from bringing a separate cause of action for fraud. In *J.J. DeLuca Co.*, DeLuca was hired for the construction of townhomes and condominiums by the Toll. 56 A.3d at 407. DeLuca and Toll eventually discontinued their contractual relationship over claims by DeLuca that it was owed monies for work completed and that Toll had wrongfully delayed the project. *Id.* Toll brought competing claims for defective work by DeLuca. *Id.* During discovery, Toll allegedly learned of significant fraud related to DeLuca's misrepresentations of its work completed and in DeLuca's billing practices. *Id.* Thereafter, Toll amended its claim to include a fraud claim. *Id.*

The trial court awarded damages for breach of contract

against Toll, even though it acknowledged "pervasive significant fraud" by DeLuca. *J.J. DeLuca Co.*, 56 A.3d at 408. The parties appealed. *Id.* The Superior Court remanded the matter with instructions. *Id.* On remand, the trial court reversed and awarded damages to Toll under the fraud claim. *Id.*

In the second appeal, DeLuca argued that the fraud claim was barred by the gist of the action doctrine. *J.J. DeLuca Co.*, 56 A.3d at 408. In order for a breach of contract to give rise to an actionable tort, the Superior Court found that "the wrong ascribed to defendant must be the gist of the action, the contract being collateral." *Id.* at 413. The court found that (1) the developer's claim did not arise "solely from a contract between the parties," (2) "the duty breached was not created by the contract," (3) "the liability did not stem from a contract," and that (4) "the tort claim does not duplicate a breach of contract claim or the success of which is wholly dependent upon the terms of a contract." *Id.* at 414. The court determined that that actions by DeLuca indicated that Toll "was merely a convenient cash box to fund the [DeLuca's] fraud," because DeLuca did not perform the work at all, and that "[t]he mere incidental employment of a contractual provision as the vehicle or instrument to perpetrate a fraud does not immunize a perpetrator from liability for fraud." *Id.*

In the instant case, the plaintiff's allegations arise out of the contractual relationship. In particular, the plaintiff alleges that the defendant breached the contract by failing to notifying her of the ability to rescind it, incomplete performance under the contract, failing to perform the completed work with the quality of workmanship expected

by plaintiff, and failing to complete the work according to schedule. The plaintiff also alleges that the defendant falsely represented to her the amount of work actually completed. Additionally, the plaintiff complains that the defendant's defective performance caused damage to the plaintiff's property by causing water damage and through his improper disposal of toxic chemicals. Clearly, the plaintiff's averments arise from the defendant's alleged defective performance under the contract.

Unlike in *J.J. DeLuca Co.*, the plaintiff avers here that the defendant has completed substantially all of the work required under the contract. Further, the disagreement here centers on whether the defendant completed the work as promised under the contract, whether he misrepresented the work completed, and whether the performance of his contractual duties below the reasonably expected standards for workmanlike performance. Plaintiff's alleged tortious acts here arose in the course of the parties' contractual relationship. Finally, the damages sought in plaintiff's tort claims essentially duplicate the breach of contract claim.

Plaintiff's allegations mirror those in *eToll, supra*, in which the Superior Court affirmed the trial court's dismissal of the fraud claim. We find that the tort claims here are inextricably intertwined with the contract claims. As a result, we dismiss the plaintiff's tort claims in her instant amended complaint.

The defendant's third preliminary objection in the nature of a demurrer is sustained. Therefore, Count I (Fraud), Count IV (Negligence Per Se), Count VII (Damage to Real Property) and Count VIII (Trespass) of the plaintiff's amended complaint are dismissed.

II. Motion to Strike Plaintiff's Request for Punitive Damages

The defendant raises a preliminary objection in the nature of a motion to strike, arguing that an award of punitive damages cannot be granted based on the plaintiff's averments, and thus any and all references to punitive damages must be stricken from the amended complaint. *See* Pa.R.C.P. 1028(a)(2). In response, the plaintiff argues that she has averred wanton and malicious conduct on behalf of the defendant, and thus may seek punitive damages under her amended complaint.

With regard to whether the plaintiff has established entitlement to punitive damages, we will generally discuss the analysis for punitive damages in Pennsylvania. The function of punitive damages in Pennsylvania is to deter. *See Martin v. Johns-Manville Corp.*, 494 A.2d 1088, 1096 (Pa. 1985). Section 908(2) of the Restatement (Second) of Torts states: "Punitive damages may be awarded for conduct that is outrageous, because of the defendant's evil motive or his reckless indifference to the rights of others." *See Chambers v. Montgomery*, 192 A.2d 355, 358 (Pa. 1963). The Pennsylvania Supreme Court has embraced this guideline and found that "punitive damages must be based on conduct which is malicious, wanton, reckless, willful, or oppressive." *Feld v. Merriam*, 485 A.2d 742, 747-48 (Pa. 1984).

In determining whether to impose punitive damages, a court should evaluate the state of mind of the actor. *Id.* at 748. Punitive damages "may not be awarded for misconduct which constitutes ordinary negligence such as inadvertence, mistake and errors of judgment." *McDaniel*

*v. Merck, Sharp & Dohme*, 533 A.2d 436, 447 (Pa. Super. Ct. 1987). Instead, the outrageous conduct "must show the actor's evil motive or reckless indifference to the rights of others." *Hess v. Hess*, 580 A.2d 357 (Pa. Super. Ct. 1990). As a result, "in deciding whether punitive damages should be assessed, the nature of the tortfeasor's act itself, together with his motive, the relationship between the parties and all other attendant circumstances should be taken into account." *Martin*, 494 A.2d at 1096.

In Pennsylvania, however, punitive damages cannot be recovered under a breach of contract claim. *See Smith v. Harleysville Ins. Co.*, 418 A.2d 705, 706 (Pa. Super. 1980). Regardless of any allegations of wantonness, the gist of the action doctrine, discussed above, bars the plaintiff's tort claims. Plaintiff is not entitled to punitive damages.

The defendant's preliminary objection in the nature of a motion to strike plaintiff's request for punitive damages is sustained and granted. We therefore strike any reference to punitive damages in the plaintiff's amended complaint.

III. Motion to Strike Treble Damages under the UTPCPL

The defendant next argues that the plaintiff is not entitled to treble damages as a matter of law, because courts must be governed by "the well-established, general principles of law governing punitive damages" when exercising their discretion in awarding treble damages under the Unfair Trade Practice and Consumer Protection Law (UTPCPL). *Johnson v. Hyundai Motor America*, 698 A.2d 631, 639-40 (Pa. Super. 1997). In response, the plaintiff asserts that (1) she is entitled to both punitive and treble damages, and (2) the principles governing the award of treble damages

are separate and distinct from those governing punitive damages.

In *Schwartz v. Rockey*, 932 A.2d 885 (Pa. 2007), our Supreme Court addressed the standard for determining whether to permit treble damages. The court found that "as a matter of statutory construction, that the courts' discretion to treble damages under the UTPCPL should not be closely constrained by the common-law requirements associated with the award of punitive damages. *Schwartz*, 932 A.2d at 898. The court found, however, that this discretion is not limitless, stating "we believe that awards of treble damages may be reviewed by the appellate courts for rationality, akin to appellate review of the discretionary aspect of equitable awards." *Id.* Further, in determining whether to award treble damages, "courts of original jurisdiction should focus on the presence of intentional or reckless, wrongful conduct, as to which an award of treble damages would be consistent with, and in furtherance of, the remedial purposes of the UTPCPL." *Id.*

Here, the plaintiff avers in Count III that the "defendant fraudulently misrepresented and billed for work that he stated was complete or substantially complete, but was not complete." Amended complaint ¶ 47. Further, she asserts that the work product was inferior to that represented to her, that the defendant did not notify her of the three-day rescission period, and that the defendant did not honor warranties under the contract. *Id.* at ¶¶ 49-52. The plaintiff includes language of the defendant's "extreme, outrageous and egregious behavior" and asserts that he acted out of malice and wanton disregard. *Id.* at ¶ 48.

An award of treble damages is not linked to that of

punitive damages, but rather is allowed under the statutory authority of the UTPCPL. As the plaintiff alleged an action under the UTPCPL, the trial court may exercise its discretion to award treble damages. Therefore, the defendant's preliminary objection in the nature of a motion to strike plaintiff's request for treble damages under the UTPCPL is overruled and said motion is denied.

IV. Motion to Strike Paragraphs 23 and 25 of Plaintiff's Complaint

The defendant alleges that paragraphs 23 and 25 of the plaintiff's amended complaint should be stricken under Pennsylvania Rule of Civil Procedure 1028(a)(2) because the plaintiff "has failed to demonstrate any causal connection between these facts and the damages she has allegedly suffered." Preliminary objections ¶¶ 60-66. As a result, the defendant argues that those paragraphs are scandalous or impertinent, and should be stricken.

In response, the plaintiff asserts that the averments, while scandalous, are pertinent, ongoing, and aid in providing the foundation for her claims. Specifically, she asserts that these averments speak to the credibility of the defendant and/or its employees, provides a foundation for damages, and speak to why the work may not have been completed according to the terms of the contract. She also asserts that it shows a lack of supervision on the part of the defendant.

Pa.R.C.P. 1028(a)(2) provides for preliminary objections to be filed when pleadings include a scandalous or impertinent matter. In order to be scandalous or impertinent, "the allegation must be immaterial and inappropriate to the proof of the cause of action." *Common*

*Cause/Pennsylvania v. Commonwealth*, 710 A.2d 108, 115 (Pa. Commw. 1998). The right to strike an impertinent matter, however, "should be sparingly exercised and only when a party can affirmatively show prejudice." *Commonwealth Dep't of Envtl.. Res. v. Hartford Accident and Indem. Co.*, 396 A.2d 885, 888 (Pa. 1979).

Here, the plaintiff has made allegations regarding prior criminal activity of the defendant and his subcontractors. All allegations of criminal activity are unrelated to this contractual dispute. It is apparent that the allegations of past criminal activity are offered to attack the moral character of the defendant and his employees. As a result, the allegations are immaterial, inappropriate and must be stricken under Pa.R.C.P 1028(a)(2).

Therefore, the defendant's preliminary objection in the nature of a motion to strike paragraphs 23 and 25 is sustained and said motion is granted.